David J. CURTIN

v.

Frederick LATAILLE et al.

v.

Francis ANDRADE et al.

No. 85–301–A.

Supreme Court of Rhode Island.

July 1, 1987.

Michael Eskey, Jones & Aisenberg, Raymond A. LaFazia, Gunning, LaFazia & Gnys, Inc., Providence, for plaintiff.

Paul Reynolds, Boyer, Reynolds & DeMarco, Douglas Smith, Kenneth Borden, Higgins, Cavanagh & Cooney, Providence, for defendants.

## OPINION

SHEA, Justice.

This case is before us on appeal by the third-party plaintiff from the entry of a directed verdict in his action for contribution against the third-party defendants. In granting the directed verdict, the trial justice held that he found no evidence that any of the third-party defendants aided or abetted the third-party plaintiff in the commission of a tort. We affirm.

The facts leading to the granting of the directed verdict in this case began in October 1978 when a group of boys congregated at St. Paul's Church in Cranston, Rhode Island. According to testimony taken in the court below, the boys met for the purpose of fighting a group of older boys. The proposed fight was a follow-up to an earlier confrontation between certain members of each group. George Bovill, a third-party defendant, testified that he heard of the younger gang's meeting at the church, that he gathered a few of his friends and walked toward the church, and that the younger boys dispersed when they saw the older boys approaching. After the younger boys split up, a smaller group of them congregated at the house of a friend, Michael Fayne.

Three of the older boys, David Curtin (first-party plaintiff in this case), Bovill, and Francis Andrade drove over to Fayne's house in Andrade's car and began talking to a few of the younger boys. Two of the younger boys, Wayne Malmberg and third-party plaintiff Frederick Lataille, were standing together in the driveway of the Fayne house. One of the two fired a pellet gun into the car driven by Andrade, striking Curtin. As a result, Curtin lost his right eye.

Curtin brought suit against a number of defendants, including Lataille. Lataille settled out of court with Curtin and subsequently brought suit for contribution as a third-party plaintiff against the following boys: Andrade, Bovill, Paul Drumm, Thomas and Timothy Colerick, Russell DeMarco, Richard Garcia, and Donald R. Kelly. Also named as third-party defendants were a number of the boys' parents pursuant to G.L. 1956 (1969 Reenactment) § 9–1–3, as amended by P.L. 1974, ch. 137, § 1.[1]

The trial justice held that the law of this state requires the same showing from a plaintiff seeking contribution in a civil case as that required for imposing liability on an aider and abettor under our criminal statutes. He ruled that the plaintiff must show that the alleged joint tortfeasors were present at the scene of the tort and aided, abetted, or assisted him in firing the pellet gun. Reviewing the evidence as it related to each of defendants, he found no evidence that Tim Colerick, Drumm, Kelly, DeMarco, or Garcia was even present at Fayne's house when the Andrade car arrived. Testimony established that Tom Colerick left the area shortly after the car appeared. The trial justice held that Andrade, as the driver of the car, was very nearly a victim himself and that there was no evidence that Bovill, sitting in the back seat, aided, abetted, assisted, or encouraged the tortious act. He emphasized in his decision that there was no fight occurring at the time of the shooting, that the shooting was an isolated act, and therefore found no concerted action. Consequently, defendants' motion for a directed verdict was granted.

On appeal from a decision on a motion for directed verdict, we are bound by the same rules that govern the trial justice.

---

1. We shall now refer to third-party plaintiff Lataille as plaintiff and to the named third-party defendants as defendants.

Without considering the weight of the evidence or the credibility of the witnesses, we examine all evidence in the light most favorable to the nonmoving party. After drawing only those reasonable inferences that support the nonmoving party's position, we determine whether the evidence presented and the inferences drawn therefrom may support conflicting conclusions by reasonable minds. If not, we must affirm the decision of the trial justice. *Kottis v. Cerilli*, 526 A.2d 506 (R.I.1987).

Our criminal act of aiding and abetting requires two elements; first, that the alleged aider and abettor share in the criminal intent of the principal, and second, that there exist a community of unlawful purpose. *State v. Gazerro*, 420 A.2d 816, 828 (R.I. 1980). Presence at the scene alone will not support a conviction for aiding and abetting, but it is a factor that must be considered in the determination of guilt. *Id.* Additional factors to be considered, also not dispositive on their own, include the association or relationship between the principal and the alleged aider and abettor, knowledge that an unlawful act was to be committed, and flight from the scene. *Id.* Each case, however, must be evaluated on its own facts. *Id.*

The plaintiff urges us to apply the standard for determining tortious liability of persons acting in concert as defined in 4 Restatement (Second) *Torts* § 876(b) (1979). According to that test, an individual will be held liable for harm resulting to a third person from the tortious conduct of another if he or she "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." In determining whether the assistance or encouragement is substantial enough to invoke liability, the Restatement suggests a consideration of factors similar to those enumerated by this court in *Gazerro*. In addition to a consideration of the presence and the state of mind of the alleged aider and abettor, and the relationship between him or her and the principal, as suggested in *Gazerro*, the Restatement also suggests a consideration of the nature of the act

encouraged and the amount of assistance given to the principal. It appears, then, that applying our criminal test of aiding and abetting to a civil action is consistent with the test set forth in the Restatement. *See Winslow v. Brown*, 125 Wis. 2d 327, 335, 371 N.W. 2d 417, 422 (1985). Consequently, we agree with the trial justice's use of the criminal standard in this case.

We acknowledge that an aider and abettor need not be present at the scene of the criminal or tortious act. This court however, recognizes presence as one of a number of factors to be considered when making a determination regarding liability for aiding and abetting. Although the trial justice stated that presence at the scene is a necessary prerequisite to liability for aiding and abetting, we find the error to be harmless. In fact, we find that the facts and circumstances presented in this particular case would require presence before liability for aiding and abetting could be imposed.

In an extensive treatment of civil liability for aiding and abetting, the United States Court of Appeals for the District of Columbia found that the presence requirement applied to all the cases it analyzed save one. *See Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983). The one exception involved a situation in which the aider and abettor sold a model's picture to a company with knowledge that the company would alter and use the picture to defame the model. *Russell v. Marboro Books*, 18 Misc. 2d 166, 187, 183 N.Y.S. 2d 8, 32 (1959). The *Russell* court applied the Restatement test, which uses presence as a factor to be considered, and reasoned that acquisition of the photograph was an indispensable prerequisite to the libel. *Id.* It held, therefore, that the sale, along with knowledge of the buyer's intent to alter and publish the picture, could constitute "substantial assistance" even without the seller's presence at the time the wrong was done. *Russell* is easily distinguished from the facts before us. The defendants in the case before us who were not present at the scene did not supply an "indispensable prerequisite" to the shooting.

The testimony in the case before us shows that the younger boys agreed that by the time they left St. Paul's Church, any notion of a fight that night had disappeared. Therefore, applying our test of liability for aiding and abetting, we find no community of unlawful purpose in existence at the time of the shooting. Although injuries inflicted during the course of a gang fight could impose liability on a participant in the fight even though that individual did not directly cause the injuries, the testimony here demonstrates that there was no such fight in progress or even planned at the time the injury in this case was inflicted. The trial justice correctly made note of this fact in his decision. In addition, without such a "joint enterprise" or "common purpose," plaintiff also cannot recover contribution against defendants as joint tortfeasors under G.L. 1956 (1969 Reenactment) chapter 6 of title 10.

Applying the other element of our aiding-and-abetting analysis, we again agree with the conclusion of the trial justice. The testimony shows that no defendant, regardless of his presence at the scene, shared the intent of the principal. A few defendants testified they did not even hear of the shooting until the next day. To impose liability on the defendants simply because they may share membership in a street gang and thereby share common enemies would produce absurd results. Unless the boys were engaged in some type of group activity at the time of this tort, liability may not be imposed. Any other finding would impose liability on other gang members for any act done by another gang member at any time as long as the act was performed in furtherance of the nebulous common purpose of "fighting the enemy."

For the above-stated reasons, the appeal of the third-party plaintiff, Lataille, is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.