Amelia FERREIRA et al.

v.

William STRACK et al.

No. 94–381–Appeal.

Supreme Court of Rhode Island.

Jan. 24, 1995.

Cort Chappell, Middletown, for plaintiffs.

Kevin Cain, Providence, for defendants.

OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal by the plaintiffs, Amelia Ferreira (Amelia), Frank Ferreira (Frank), and Frank Bors on his own behalf and as executor of the estate of Florinda Amado–Bors (Florinda), from a summary judgment entered in the Superior Court for the County of Newport in favor of the defendants, Patrick M. Maher and Joanne D. Maher (the Mahers).[1] For

---

1. The plaintiffs named seven defendants in their original complaint: William Strack, the owner

the reasons set forth below, we affirm the summary judgment. The following undisputed facts will provide the necessary background for this appeal.

On December 24, 1986, Amelia, Frank, and Florinda drove to St. Joseph's Church (church) in Newport to attend Midnight Mass. They parked their car in a small parking lot directly across the street from the church. The parking lot is separated from the church by Broadway, a public highway.

After the Mass ended, Amelia, Frank, and Florinda left the church and walked across Broadway en route to their car across the street. Amelia and Florinda were struck by a vehicle driven by William Strack (Strack) while they were in the crosswalk. It is undisputed that Strack was legally intoxicated when his vehicle struck plaintiffs. Florinda died within hours of the accident. Her sister, Amelia, suffered severe and permanent injuries.

The following undisputed facts regarding Strack's alcohol consumption on the evening of December 24, 1986, are based on Strack's deposition of January 4, 1991. Strack and a friend began drinking alcohol at approximately 4:30 p.m. at Strack's apartment where they imbibed one or two twelve-ounce cans of beer. After leaving the apartment, Strack and his friend drove to another friend's house nearby for a brief visit. According to his testimony, he consumed a beer in the car on the way to this house. Upon arrival, Strack consumed one beer and left in order to have another beer or two at the Irish American Club, a local bar he frequented, before it closed at 6 p.m. He left the Irish American Club shortly after 6 p.m. and left his car at the club or at his parents' house. He then drove to the Narragansett Cafe on Long Wharf with yet another friend.

While in this friend's truck, Strack acknowledges, he may have had another beer before he and his friend arrived at the cafe

sometime between 6 and 7 p.m. Immediately upon arrival Strack ordered and drank a beer and had at least two more, if not three, before leaving between 8:30 and 9 p.m. Strack's testimony reveals the probability that he indulged in several shots of liquor while he was at the Narragansett Cafe in addition to the three or four beers he imbibed.

Strack's next stop was the Mahers', defendants in this case, who were hosting a holiday party at their home on Bellevue Avenue. Strack did not know the Mahers. He heard about their party by word of mouth approximately one hour before he decided to attend. Strack is uncertain whether he might have made a stop at his house first prior to arriving at defendants' home sometime between 9 and 10 p.m. that evening. If he did stop at his house, his testimony reveals, he would have consumed more alcohol at that point.

As indicated, Strack did not know the Mahers, nor had he ever met them prior to the night of their holiday party. In addition he had never been to their home, nor did he know a family by the name of Maher on Bellevue Avenue. His testimony clearly indicates that he did not receive a verbal or a written invitation from either defendant or any of their three children.

Strack went to defendants' home twice on the evening of December 24, 1986. From the time he began to drink alcoholic beverages sometime around 5 p.m. that afternoon he consumed, at various places, a quantity of alcohol up to at least ten beers and several shots of hard liquor. His first visit to the Mahers' home fell approximately between 9 and 10 p.m. that night. On that first visit, Strack testified, that he consumed only alcoholic beverages that he had brought with him to defendants' home. Strack is uncertain how many beers he consumed on this first visit, but he was drinking beer he had

---

and operator of the vehicle that struck plaintiffs; NWPT, Inc., a Rhode Island Corporation; Martin A. Galvin and Thomas A. Galvin Trust d.b.a. Narragansett Cafe, who allegedly served alcoholic beverages to Strack on the evening of the incident; Patrick M. Maher and Joanne D. Maher; and St. Joseph's Church, which allegedly failed to provide adequate traffic control at the scene of the incident. Summary judgment for the church was granted at the trial level, and plaintiffs' appeal from that judgment was denied by this court in Ferreira v. Strack, 636 A.2d 682 (R.I.1994) (Ferreira I). This appeal relates only to the granting of summary judgment in favor of the Mahers.

brought with him that was in a brown paper bag he held in his arms. He then left defendants' home either to retrieve or to drop off his car.

Strack later returned to the Mahers' home for a second visit. His deposition does not clarify the precise time of this visit. Most of the time intervals, including this second visit, as well as the quantities of alcohol consumed, appear to be estimates because Strack was inebriated and six years had elapsed from the time of the incident to that of the deposition. However, it is undisputed that while at the Maher home for the second time, Strack consumed one additional beer. He testified that he was not offered or served this beer by anyone but rather helped himself to it from the Mahers' refrigerator. He then left the Mahers'. He did not speak with anyone or engage in any activities during this second visit.

After leaving the Mahers' home, Strack traveled to the On Deck Circle, a nearby drinking establishment, where he consumed one beer and one shot of hard liquor. He left the On Deck Circle at approximately 1 a.m. He testified that he felt he was too drunk to drive but he drove nonetheless. It was shortly thereafter, at approximately 1:25 a.m. on December 25, 1986, when Amelia and Florinda were struck by the vehicle driven by an intoxicated Strack.

The plaintiffs filed suit against defendants, outlining their allegations. Following the exchange of extensive discovery between the parties, defendants filed a motion for summary judgment, which was granted by the trial justice. Separate and final judgment was entered in favor of defendants on September 8, 1992, and this appeal ensued.

In their suit against defendants, plaintiffs allege that Strack had been a guest of the Mahers in their home prior to the accident on the evening of December 24, 1986. The plaintiffs further allege that Strack was furnished alcoholic beverages while at the Maher home, which caused and increased his intoxication, and that defendants knew or should have known that Strack was intoxicated. The plaintiffs also allege that the Mahers knew or should have known that Strack was intent on operating a motor vehicle that evening.

Lastly, plaintiffs allege that by actually or constructively knowing that Strack was intoxicated and intent on operating a motor vehicle, defendants owed a duty of care to the general public. The plaintiffs assert that this alleged duty of care to prevent Strack from operating a motor vehicle was specifically owed to plaintiff Amelia Ferreira and that their failure to do so constituted negligence.

The issue to be addressed is whether there exists a duty of care owed by a defendant social host to an innocent third party who suffers injuries as a result of the negligent operation of a motor vehicle by an adult guest if the negligence is caused by the guest's intoxication. This court has never ruled on the issue. After careful review and reflection we are of the opinion that the facts in this case fall short of what would be necessary to impose such a duty.

■ In Rhode Island "negligence is the breach of a duty, the existence of which is a question of law." *Barratt v. Burlingham,* 492 A.2d 1219, 1222 (R.I.1985). "Whether there exists a duty of care running from the defendant to the plaintiff is, therefore, a question for the court and not for the jury." *Banks v. Bowen's Landing Corp.,* 522 A.2d 1222, 1224 (R.I.1987). If no duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted. *Id.* at 1225. In *Banks* we stated:

"No clear-cut rule exists to determine whether a duty is in fact present in a particular case; however, courts such as the California Supreme Court have articulated several factors that may be applied to aid in that determination. In considering whether a duty exists, among the factors considered are (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise

care with resulting liability for breach." *Id.* at 1225.

An application of these principles leads this court to the firm conclusion that the trial justice was not in error when he found that defendants had no duty of care to plaintiffs in this case.

█ This court has never adopted the principle that a social host owes a duty to a third person injured by an intoxicated person who has obtained intoxicating liquor at his or her home. This court has long held that the creation of new causes of action should be left to the Legislature. *Kalian v. People Acting through Community Effort, Inc.,* 122 R.I. 429, 432, 408 A.2d 608, 609 (1979); *Castellucci v. Castellucci,* 96 R.I. 34, 38, 188 A.2d 467, 469 (1963); *Levasseur v. Knights of Columbus,* 96 R.I. 22, 24, 188 A.2d 469, 471 (1963). The majority of courts in other jurisdictions faced with the question of extending common-law tort liability to the social-host guest context have deferred to the Legislature. The reasoning for this deferral is their consideration that the question raised is one of broad public policy rather than an interpretation of the common law. *See* James F. Mosher, *Liquor Liability Law* (1994). This treatise provides an excellent summary of the development of liquor-liability law in the social-host guest context.

The majority of jurisdictions adhere to the common-law rule of social-host immunity. The courts adhering to the majority approach generally apply one of three rationales when they hold that no liability can attach to social hosts. The rationales employed are (1) traditional principles of common law, (2) issues of social policy, and (3) deference to the Legislature. These courts are reluctant to impose liability on social hosts based on the basis of negligence principles alone, without the support of express legislative policy. *See Faulk v. Suzuki Motor Co., Ltd.,* 9 Haw.App. 490, 851 P.2d 332 (1993) (a social host had no tort-law duty to protect third persons from intoxicated guests who attended the host's party and drove in a negligent manner, causing injury); *Ribbens v. Jawahir,* 175 Mich.App. 540, 438 N.W.2d 252 (1988) (social-host liability does not extend to a social host who served alcohol to an adult who subsequently injured a third person as a result of his intoxication); *Sites v. Cloonan,* 328 Pa.Super. 481, 477 A.2d 547 (1984) (a noncommercial association cannot be held liable for injuries arising from its service of alcohol at a social event); *Garren v. Cummings & McCrady, Inc.,* 289 S.C. 348, 345 S.E.2d 508 (1986) (no duty under common law or statute will be imposed upon a social host; any action to be taken should be the result of legislative initiative, not judicial interpretation); *Graff v. Beard,* 858 S.W.2d 918 (Tex.1993) (the Texas Supreme Court declined to find common-law social-host liability and refused to judicially create a cause of action that the Legislature had specifically rejected), *rev'g, Beard v. Graff,* 801 S.W.2d 158 (Tex. Ct.App.1990); *Hansen v. Friend,* 59 Wash.App. 236, 797 P.2d 521 (1990) (emphasizing deference to the Legislature); *Overbaugh v. McCutcheon,* 183 W.Va. 386, 396 S.E.2d 153 (1990) (in the absence of legislation, the West Virginia Supreme Court refused to impose social-host liability against an employer who served liquor at a Christmas party; in making the decision, the court took notice of the fact that most jurisdictions do not impose such common-law liability absent statutory law); *Langle v. Kurkul,* 146 Vt. 513, 510 A.2d 1301 (1986) (the Supreme Court of Vermont held that a social host owes no duty to an intoxicated adult guest). As noted in the opinion, exceptions to the common-law rule of social-host immunity arise in some jurisdictions, as in New Jersey, for example, when a host has served alcoholic beverages to an obviously intoxicated person or a minor.

The imposition of liability upon social hosts for the torts of guests has such serious implications that any action taken should be taken by the Legislature after careful investigation, scrutiny, and debate. It is abundantly clear that greater legislative resources and the opportunity for broad public input would more readily enable the Legislature to fashion an appropriate remedy to deal with the scope and severity of this problem.

Currently only two jurisdictions have, by judicial action, imposed liability upon a social host for the negligent service of alcohol to a guest. In the landmark case of *Kelly v.*

*Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984), the New Jersey Supreme Court established that a social host who serves alcoholic beverages to an adult guest, knowing both that the guest is visibly intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted upon a third party as the result of the negligent operation of a motor vehicle by the adult guest who is intoxicated. *Id.* at 548, 476 A.2d at 1224. However, in *Kelly,* the court emphasized that it was passing only on the duty of a social host who "directly serves the guest and continues to do so even after the guest is visibly intoxicated." *Id.* at 556, 476 A.2d at 1228.

The plaintiffs' reliance on *Kelly* is misplaced. The facts in *Kelly* are vastly different than the facts in this case. In *Kelly,* the guest was directly served alcoholic beverages by the social host; here, Strack was a stranger in defendants' home, and he served himself.

Massachusetts imposed tort liability upon a social host in the following situation:

"[W]here a social host who knew or should have known that his guest was drunk, [and] nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing [a] third person's injury. In deciding whether the social host exercised ordinary prudence in such circumstances, a relevant consideration will be whether the social host knew or reasonably should have known that the intoxicated guest might presently operate a motor vehicle." *McGuiggan v. New England Telephone & Telegraph Co.,* 398 Mass. 152, 162, 496 N.E.2d 141, 146 (1986).

In a later case the Supreme Judicial Court of Massachusetts stated that although the facts of the case before it did not warrant the imposition of liability, nevertheless liability can exist in a "situation where a social host makes the host's liquor available to an intoxicated guest so the guest can continue to serve himself." *Ulwick v. DeChristopher,* 411 Mass. 401, 405, 582 N.E.2d 954, 956 (1991).

In passing on a motion for summary judgment, the trial justice must determine whether there is a genuine issue of material fact, and if not, the trial justice must determine whether the moving party is entitled to judgment as a matter of law. *Alfano v. Landers,* 585 A.2d 651, 652 (R.I.1991). The trial justice relies upon an examination of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and memoranda of law and reviews them in the light most favorable to the nonmoving party. *Ludwig v. Kowal,* 419 A.2d 297, 301 (R.I. 1980). If no genuine issue of material fact is found, then the moving party is entitled to judgment as a matter of law. *Belanger v. Silva,* 114 R.I. 266, 267, 331 A.2d 403, 404 (1975). In reviewing the decision of a trial justice to grant summary judgment, this court applies the same standard as the lower court.

The trial justice determined that there was no genuine issue of material fact in dispute. We agree. The facts of this case are inadequate to form a basis for the imposition of a duty upon defendants. Neither the less stringent Massachusetts standard of "knew or should have known" nor the New Jersey requirement of "direct service of alcohol" can be applied here.

At the outset it is questionable whether Strack could even be termed a social guest. It is undisputed that he received neither an implied nor an express invitation to attend the holiday party at defendants' home. It stands to reason that Strack's status is more akin to that of a trespasser. The term "trespasser" is defined as "[o]ne who intentionally and without consent or privilege enters another's property." Black's Law Dictionary 1504 (6th ed.1990). In *Mendoza v. City of Corpus Christi,* 700 S.W.2d 652, 654 (Tex. Ct.App.1985), the court further defines a trespasser as "one who enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in performance of any duties to the owner, but merely for his own purpose, pleasure or convenience." Clearly Strack was in defendants' home, without their consent or invitation, for his own pleasure.

Furthermore, the undisputed facts are that defendants had never met Strack either at an earlier time or on the night in question, casting doubt upon their ability to know, either constructively or actually, that he was intoxicated or that he might operate a motor vehicle. They were not aware of his presence in their home, and they had no opportunity to observe him in his intoxicated state. On Strack's first visit to defendants' home, he brought his own alcohol with him. This fact is not disputed. Therefore, these defendants were not in a position to evaluate Strack's level of intoxication.

Although plaintiffs attempt to manufacture a factual dispute from gaps in Strack's memory on the evening in question, the trial justice concluded, and we agree, no genuine issue of material fact exists. Likewise, there is no genuine issue of material fact concerning Strack's second visit to defendants' home on that evening. It is undisputed that on this visit Strack was not served or offered alcoholic beverages by anyone, including defendants. Rather, he helped himself to a beer from the refrigerator and engaged in no social activities while he was there for a brief time.

The fundamental question in this case is whether defendants Mahers owed a duty to plaintiffs. The trial justice's determination that no such duty existed was correct. As stated above, duty is a question of law to be decided by the trial justice; if no duty is found to exist, then there is nothing for the jury to consider and summary judgment must be granted. *Banks*, 522 A.2d at 1224–25. Given the facts before us, we decide only that the defendants did not owe a duty to plaintiffs.

There is no doubt that the clear public policy of our nation and this state is to prevent individuals from driving while intoxicated. Preventing the future loss of innocent lives because of intoxicated drivers requires both legislative and judicial action in a combined effort to win the war against the devastating consequences of drunk driving. The Legislature must set out the duties and responsibilities of various segments of our society within these social situations, and the courts must stringently enforce those duties and responsibilities.

For these reasons the plaintiffs' appeal is denied and dismissed, the judgments appealed from are affirmed, and the papers of the case are remanded to the Superior Court.

MURRAY, J., did not participate.