Brian MARTIN

v.

Matthew J. MARCIANO et al.

No. 2003–561–Appeal.

Supreme Court of Rhode Island.

April 27, 2005.

Richard A. Merola, Providence, for Plaintiff.

Patricia A. Buckley, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

WILLIAMS, Chief Justice.

The plaintiff, Brian Martin (plaintiff), was attacked with a baseball bat while attending a high school graduation party that the defendant-parent, Lee Martin[1] (defendant), hosted in honor of her daughter, Jen Martin (Jen). The plaintiff brought suit against the assailant, Chijoke Okere (Okere), party guest Matthew J. Marciano (Marciano), and the defendant. A Superior Court motion justice granted the defendant's motion for summary judgment,[2] concluding that the defendant owed no duty to the plaintiff to protect him from Okere's attack. The plaintiff timely appealed.

Based on the evidence before this Court, we are of the opinion that summary judgment was inappropriate. If defendant provided alcoholic beverages to underage partygoers as plaintiff alleges, or had actual knowledge of the presence and consumption of alcohol by underage drinkers on her property, then defendant was duty-bound to exercise reasonable care to protect plaintiff from physical assault by persons expected to be in attendance or those acting at their behest. Whether plaintiff's injuries are causally related to defendant's conduct, or Okere's actions constitute a supervening act, thus breaking the causal link, are unresolved questions of fact to be determined by the fact-finder. Accordingly, we vacate the judgment of the Superior Court.

## I

### Facts and Travel

In this appeal from a summary judgment, we must resolve factual inconsistencies in favor of the nonmoving party.[3]

---

1. Although they share the same last name, plaintiff and defendant are not related.

2. The motion justice entered partial final judgment only as to defendant pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. Thus, Okere and Marciano are not parties to this appeal.

3. The parties to this appeal first appeared before this Court on May 6, 2004, pursuant to an order directing them to appear and show cause why the issues raised should not summarily be decided. Because cause was shown, this case was heard on the full calendar on March 7, 2005.

Santiago v. First Student, Inc., 839 A.2d 550, 552 (R.I.2004). As discussed below, defendant asserts, based on the limited nature of the record given the early stage of the proceedings when her motion was filed, that there are no facts in dispute. Our review of the deposition testimony, police reports, pleadings and admissions contained in the record, however, reveals that plaintiff's version of the events does, in fact, differ from defendant's. Therefore, we resolve any inconsistencies in favor of plaintiff.

The record establishes that defendant hosted a high school graduation party for Jen at her home in the City of Warwick on July 9, 2000. A large tent and port-a-john had been rented for the occasion; in the absence of a formal guest list, people were invited through word-of-mouth. The plaintiff arrived at the party with a group of friends at approximately 8 p.m. When he arrived, there were between forty and fifty guests already there, but the number grew to approximately seventy. According to plaintiff, despite the fact that most of the guests were between the ages of seventeen and twenty, two kegs of beer were available when he arrived and many guests supplemented that supply with their own alcohol. The plaintiff said in his deposition testimony that he consumed approximately six beers from the kegs.

Marciano was also among the guests. The plaintiff testified at his deposition that he knew Marciano and, approximately one year before the party, Marciano had punched him in the face "for no reason." At some point during the evening, a fight erupted between Marciano and some of plaintiff's friends. As the fight spilled onto the street, plaintiff's friends threatened to punch Marciano. The plaintiff told Marciano to leave so the situation would defuse and the party could continue. The record discloses that Marciano left the premises but called his friend Okere, intending to return with reinforcements. Significantly, Marciano supplied Okere with a baseball bat.

Approximately half an hour to an hour later, Marciano returned to the party with Okere, who was wielding a baseball bat and asking "Who f——ed with Matt Marciano?" Within minutes of Okere's arrival, plaintiff was struck on the head with the bat that Okere had been holding. Before being hit, plaintiff did not see Okere but he heard that there likely was going to be a fight and saw people "scrambling." According to one witness, after plaintiff was hit, defendant went inside her house and locked the door, excluding people who were looking for paper towels to tend to plaintiff's head injuries. According to his brief, plaintiff suffered considerable brain damage as a result of the injury.

The plaintiff brought the instant action against defendant, as well as Okere and Marciano. The defendant moved for summary judgment, arguing that she owed plaintiff no duty to protect him from an unforeseeable attack on her property or, alternatively, that Okere's actions constituted an intervening act that broke the chain of causation between plaintiff's injuries and any negligence on her part. The motion justice granted summary judgment on the ground that defendant did not have a duty to protect plaintiff because such an attack was unforeseeable.

## II

### Analysis

■ This Court reviews a grant of summary judgment on a *de novo* basis, applying the same standards as the motion justice. *Santiago,* 839 A.2d at 552. We, like the motion justice, review the evidence in the light most favorable to the nonmoving party, drawing all reasonable infer-

ences in his favor. *Id.* Summary judgment is appropriate if there are no remaining genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Because summary judgment is an extreme remedy, we will affirm such a decision only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." *Wright v. Zielinski,* 824 A.2d 494, 497 (R.I.2003) (quoting Rule 56(c) of the Superior Court Rules of Civil Procedure).

## A

### Legal Duty

 A legal duty is a question of law that the court alone is authorized to determine. *Volpe v. Gallagher,* 821 A.2d 699, 705 (R.I.2003). As there is "[n]o clear cut formula" for determining the existence of a duty, the court will make the determination on a case-by-case basis. *Id.* In so doing, this court " 'will consider all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations,' " *id.,* and the "foreseeability of harm to the plaintiff." *Banks v. Bowen's Landing Corp.,* 522 A.2d 1222, 1225 (R.I.1987).

 As a general rule, a landowner has no duty to protect another from harm caused by the dangerous or illegal acts of a third party. *Luoni v. Berube,* 431 Mass. 729, 729 N.E.2d 1108, 1111 (2000). An exception to this rule exists, however, when a plaintiff and a defendant bear a special relationship to each other. *Id.* "A

special relationship, when derived from common law, is predicated on a plaintiff's reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm." *Id.* One such relationship exists between those who provide intoxicants and those whom they serve. 2 Stuart M. Speiser et al., *The American Law of Torts,* § 9:20 at 1125 (1985); *see also Grisham v. John Q. Long V.F.W. Post, No. 4057 Inc.,* 519 So.2d 413, 416 (Miss.1988) ("the keeper of a bar or tavern, though not an insurer of his guests' safety, has a duty to exercise reasonable care to protect them from reasonably foreseeable injury at the hands of other patrons").

As a party host who is alleged to have made alcohol illegally[4] available to underage guests, defendant owed plaintiff "the duty of exercising reasonable care to protect [him] from harm and criminal attack at the hands of fellow [guests] or other third persons." 2 Speiser, § 9:20 at 1125. Although this duty most often has been extended to tavern and barroom operators, *see, e.g., Grisham,* 519 So.2d at 416; *Fisher v. Robbins,* 78 Wyo. 50, 319 P.2d 116, 126 (1957), there is no valid justification for absolving an adult parent of this higher standard of care when she knowingly provides alcohol, or is aware that it is available, to underage individuals, for consumption on her property. Indeed, if a barroom patron may "rely on the belief that he is in an orderly house and that its operator, personally or by his delegated representative, is exercising reasonable care to the end that the doings in the house shall be orderly * * *," so too could plaintiff. *Fisher,* 319 P.2d at 126 (quoting

4. *See* G.L.1956 § 3–8–11.1 (prohibiting adults from providing alcohol to individuals under the age of twenty-one).

30 Am. Jur. *Intoxicating Liquors* § 609 at 575 (1940)).

This Court's holding in *Ferreira v. Strack,* 652 A.2d 965 (R.I.1995), does not preclude our recognition of defendant's duty to provide protection to her guests in this case. In *Ferreira,* we held that a social host owed no duty of care to "an innocent third party who suffers injuries as a result of the negligent operation of a motor vehicle by an adult guest if the negligence is caused by the guest's intoxication." *Id.* at 967. Despite our recognition of the clear public policy against drunk driving, we noted that "[t]he imposition of liability upon social hosts for the torts of guests has such serious implications that any action taken should be taken by the Legislature after careful investigation, scrutiny, and debate." *Id.* at 968.

The "serious implications" that counseled in favor of judicial restraint in *Ferreira* are noticeably absent here. Here, defendant is alleged, at most, to have willingly provided alcohol to a group of underage partygoers and, at least, supervised a party at which the underage guests were drinking openly and freely from two kegs of beer. *Cf. Ferreira,* 652 A.2d at 969–70 (questioning whether the drunk driver even could properly be termed a social guest because the hosts did not invite him to the party, did not know of his presence in their home, and had no opportunity to observe his level of intoxication). Moreover, we reject the notion that imposing a duty on defendant and other similarly irresponsible parents and hosts to protect their guests from harm causally related to the consumption of alcohol by underage drinkers creates an unreasonable burden. To avoid assuming a duty of protection, the adult property owner must simply comply with existing law and refuse to provide alcohol or condone underage drinking on his or her property. There-

fore, the consequences of imposing such a duty in cases such as this are not "economically and socially staggering;" in fact, they are negligible. *Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945, 949 (Ct.App.1985) (declining to "extend to the social host the liability imposed upon the tavern keeper").

We conclude that burdening parent-hosts who provide alcohol to underage guests with a duty to take reasonable steps to protect their guests from injury is in accord with the clear public policy of this state. The General Assembly has devoted considerable attention to the issue of underage drinking and has prohibited individuals under the age of twenty-one from purchasing, G.L.1956 § 3–8–6(a)(1); consuming, § 3–8–6(a)(2); possessing, § 3–8–10; and transporting alcohol, § 3–8–9. Individuals under the age of eighteen are prohibited from acting as bartenders. Section 3–8–2. Adults are prohibited from purchasing or procuring alcohol for people under the age of twenty-one. Section 3–8–11.1. These statutes demonstrate an overriding policy against not only underage drinking, but also an adult's provision of alcohol to minors, who, by virtue of their tender age and inexperience, are presumed less capable of handling the deleterious effects of alcohol consumption. The imposition of a higher standard of care in this case may provide a valuable disincentive for adults who might otherwise be willing to provide alcohol to minors, or to turn a blind eye to its consumption on their premises.

Although there may be no evidence that defendant knew of Okere's presence at the party, for the reasons stated below we are of the opinion that defendant had actual or constructive knowledge that the party she hosted created an atmosphere that could lead to violence, and hence, the need for greater vigilance. Therefore, she should have taken reason-

able steps to protect the physical safety of her social guests from attacks. The concept of foreseeability "plays a variety of roles in tort doctrine generally; in some contexts it is a question of fact for the jury, whereas in other contexts it is part of the calculus to which a court looks in defining the boundaries of 'duty.'" *Banks*, 522 A.2d at 1226 (quoting *Ballard v. Uribe*, 41 Cal.3d 564, 224 Cal.Rptr. 664, 715 P.2d 624, 628 n. 6 (1986)). As it pertains to the determination of duty, the foreseeability inquiry considers generally whether "the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Id.* at 1226–27 (quoting *Ballard*, 224 Cal.Rptr. 664, 715 P.2d at 628 n. 6).

■ Comment *e* of the Restatement (Second) *Torts* § 314A (1999) touches upon the issue of foreseeability in its description of the standard of conduct expected of those under a duty to protect others from unreasonable harm. That comment explains that one who is under such a duty "is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate * * *." *Id.* at 120. "The requisite 'cause to anticipate' the assault may arise from 1) actual or constructive knowledge of the assailant's violent nature, or 2) actual or constructive knowledge that an atmosphere of violence exists in the [location of the assault]." *W.B. Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So.2d 1186, 1189 (Miss.1994) (quoting *Grisham*, 519 So.2d at 416–17).

The Appeals Court of Massachusetts has discussed the foreseeability of an attack at a party. In *Pollard v. Powers*, 50 Mass. App.Ct. 515, 738 N.E.2d 1144, 1144–45 (2000), a party guest brought suit against his host after he was "sucker punched" by uninvited assailants. The court noted that

"'the specific kind of harm need not be foreseeable as long as it was foreseeable that there would be harm from the act which constituted the negligence, provided it was foreseeable that there would be violence toward others.'" *Id.* at 1146. "[I]t is for the jury to determine whether the assault was such a remote possibility that it was an intervening cause of harm." *Id.*

We are of the opinion that, in the context of defendant's duty, it was generally foreseeable that one of her underage guests could have been the victim of an attack while attending the party. Based on defendant's decision to rent a tent and a port-a-john, it seems she anticipated a large gathering, which is exactly what she got. Seventy underaged people arrived at the party through word-of-mouth and proceeded to drink alcoholic beverages, violating the law. Indeed, "it is common knowledge that the use of intoxicants frequently unduly excites the tempers, emotions and actions of those who indulge in them." *Fisher*, 319 P.2d at 126. This is especially true when underage individuals consume alcohol. Therefore, because it was foreseeable that a melee could break out, resulting in injury to the social guest, it is a question of fact whether Okere's actions constitute a supervening cause of harm, thereby insulating defendant from liability. *Pollard*, 738 N.E.2d at 1146.

Contrary to defendant's assertion, the recognition of a duty in this case will not transform party hosts into insurers of their guests' safety, thus creating a strict liability standard. The jury has the opportunity to limit liability if it finds that the attack occurred despite the fact that defendant took reasonable steps to provide for the safety of her underage guests. In such a case, there is no breach and, consequently, there is no negligence. *See Ferreira*, 652 A.2d at 967 ("In Rhode Island

'negligence is the breach of a duty * * *.' "). "The question of whether that duty was breached does not go to the jury until the judge has determined that the answer to the question is uncertain." Michael J. Yelnosky, Comment, *Business Inviters' Duty to Protect Invitees From Criminal Acts*, 134 U. Pa. L. Rev. 883, 910–11, 911 (1986) (explaining "the fear that juries would impose insurer liability is unwarranted").

Furthermore, defendant could be absolved of liability if her negligence did not proximately cause plaintiff's injuries. "While it is well settled that a defendant may be relieved of the consequences of his [or her] negligence by the intervention of a responsible third party, * * * it is equally well established that an intervening act will not insulate a defendant from liability if his [or her] negligence was a concurring proximate cause which had not been rendered remote by reason of the secondary cause which intervened." *Denisewich v. Pappas*, 97 R.I. 432, 436–37, 198 A.2d 144, 147–48 (1964). In other words, "[i]f an intervening and unforeseeable intentional harm or criminal act triggers the injury to the plaintiff, the criminal act is ordinarily called a superseding cause, with the result that the defendant who negligently creates the opportunity for such acts escapes liability." 1 Dan B. Dobbs, *The Law of Torts*, § 190 at 470–71 (2001). "[T]he test in these cases must be whether the intervening act could reasonably have been foreseen as a natural and probable result of the original act of negligence of the defendant." *Aldcroft v. The Fidelity and Casualty Co. of New York*, 106 R.I. 311, 314, 259 A.2d 408, 411 (1969). "Ordinarily the determination of proximate cause and, consequently, the existence of any superseding cause is a question of fact that should not be decided by summary judgment." *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 467 (R.I.1996).

This Court recently discussed whether a jury could properly find that a town's negligence proximately caused the injuries an individual suffered at a party. In *Martinelli v. Hopkins*, 787 A.2d 1158, 1161 (R.I. 2001), the plaintiff was injured when a rotted tree fell on him while he attended a private festival held pursuant to a negligently issued town license. Upon entry to the festival, the attendees were treated to unlimited beer, food and live music. To prepare the grounds for the festival, the private owner surrounded a portion of his property with a snow fence, which at one point was supported by the rotted tree. Due to the woefully inadequate toilet facilities at the event, many of the 4,500 attendees breached the fence to access a wooded area to tend to nature's call. As a group of intoxicated guests crossed over the fence to get to the makeshift privy, they caused the tree to fall on and seriously injure the plaintiff. *Id.* at 1162–64. As a result of the inadequate toilet-to-attendee ratio, and the free-flowing beer, this Court ruled that the jury could find that it was

> "reasonably foreseeable that festival attendees would seek alternative toilet arrangements in the nearby woods, and that a mere snow fence would not prevent them from achieving their objectives. * * * Consequently, a reasonable inference could be drawn that the town's negligent issuance of the license, coupled with the later failure of its police chief and police officers to control the event once they became aware that it was out of hand, proximately caused the plaintiff's injuries." *Id.* at 1170.

If a reasonable fact-finder could ascertain a sufficient nexus between the town's conduct and the plaintiff's injury in *Martinelli*, then the evidence in this case could

demonstrate a sufficient causal relationship between plaintiff's injuries and defendant's actions or inaction. Like the police officers in *Martinelli*, defendant here, in the face of the consumption of alcohol by underage drinkers, failed to take control of the party after an argument ensued between Marciano and plaintiff's friends. Rather than directing the guests to leave the party safely after the first fight of the evening, defendant instead allowed the party to continue unabated without notifying the police or providing security to the plaintiff and his fellow partiers. Clearly, the earlier fight was the catalyst for the series of events that ultimately caused plaintiff's injuries; a question of fact exists regarding how much defendant knew or should have known about that earlier confrontation. Based on the tumultuousness of the course of the events preceding the attack on plaintiff, however, we hold that there is sufficient evidence upon which a jury could find that Okere's act was reasonably foreseeable, particularly if it is established that he was acting at Marciano's request.

Although there is evidence to support defendant's position, other evidence in the record could lead reasonable minds to differing conclusions as to the foreseeability of the attack on plaintiff. Therefore, plaintiff was entitled to have a jury determine whether defendant breached her duty to provide for the reasonable protection of her guests and, if so, whether her negligence proximately caused plaintiff's injuries or whether Okere's actions constituted a superseding cause that "creates the opportunity for [defendant to] escape[ ] liability." 1 Dobbs, § 190 at 471.

## B

### Disputed Facts

We pause briefly to address defendant's argument that there were no facts in dispute when the motion justice granted her request for summary judgment. After a careful review of the record, we disagree. As discussed *supra,* defendant owed a legal duty to protect plaintiff under these circumstances. Whether defendant breached that duty is a question of fact that must be resolved by the fact-finder below and, in so doing, certain factual disputes also must be resolved.

In her response to plaintiff's request for admissions, defendant denies providing alcoholic beverages at the party. According to plaintiff's deposition testimony, there were two kegs at the party when he arrived from which he was permitted to drink; in fact, he recalled having a conversation with defendant while drinking a beer from the keg. The only witness deposed before the hearing on defendant's motion for summary judgment was a friend who accompanied plaintiff to the party. He testified unequivocally that it was defendant who supplied the kegs of beer. Clearly, whether defendant actually supplied the alcohol is a material issue of fact disputed by the parties.

Other material facts in dispute arise from the police reports made on the night of the incident and the subsequent police investigation. In one report an officer wrote that "there were beer cans and beer bottles strewn about the front and back lawns." This observation is not entirely consistent with defendant's attempt to minimize the amount of alcohol consumption at the party. It is not in dispute that defendant knew there was alcohol at the party she was hosting for her underage daughter and her daughter's underage friends. Many other questions of fact do remain, however, about what defendant knew and what precautions, if any, she took to protect the underage guests.

Also in dispute are the nature of Okere's supervening actions. After a bench trial, a Superior Court justice found Okere not guilty of felony assault but guilty of disorderly conduct. The standard in a criminal case requires the state to prove the charge beyond a reasonable doubt. The civil standard, on the other hand, is for plaintiff to prove by a preponderance of the evidence that Okere, a codefendant, intentionally hit plaintiff at Marciano's behest.

In summary, the fact-finder below must resolve how much of a role the defendant played in procuring alcohol to the minors at the party; what actions, if any, she took to protect her guests from foreseeable harm; and to what extent Okere's intervening action severed the causal effect of the defendant's actions. Also in dispute are the following, more specific, inquiries: how much knowledge did the defendant have of the fight earlier in the evening between Marciano and plaintiff's friends; what efforts did the defendant make to monitor the activities of her underage guests, including their consumption of intoxicating beverages. Undoubtedly, in this case many factual questions remain in dispute that must be resolved before the defendant is found to have negligently caused the plaintiff's injuries.

## Conclusion

In the context of this case, we hold that the defendant had a duty to protect her guests from unreasonable harm by other guests and third persons. Factual questions remain about whether the defendant breached her duty of care and whether Okere's conduct was a foreseeable supervening cause that severed the causal relationship between the defendant's conduct and the plaintiff's injuries. Therefore, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.