Elizabeth WILLIS, individually and PPA, as mother and natural Guardian of Brianna Mari Serapiglia

v.

Maurice OMAR et al.

No. No. 2007–164–Appeal.

Supreme Court of Rhode Island.

July 9, 2008.

William Savastano, North Smithfield, for Plaintiff.

Ronald Langlois, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on March 10, 2008, on appeal by the plaintiff, Elizabeth Willis, individually, and as mother and natural guardian of Brianna Mari Serapiglia (plaintiff),[1] from a Superior Court judgment in favor of the defendants, Maurice Omar (Maurice) and Barbara Omar (Barbara and collectively defendants or Omars). The plaintiff has appealed to this Court, arguing that the trial justice erred in granting the defendants' motion for summary judgment; she contends that the trial justice erred in the application of the law and failed to consider the evidence in the light most favorable to the plaintiff. For the reasons stated in this opinion, we affirm the judgment.

### Facts and Travel

The facts of this case stem from a Friday night of drinking, mixed with drunk driving, that resulted in permanent injuries to an intoxicated plaintiff from a single-car collision in a vehicle operated by plaintiff's equally intoxicated boyfriend.

On August 30, 2002, at around 5:30 p.m., plaintiff arrived at Steven N. Grise's (Grise) apartment in Manville, Rhode Island, for a planned dinner date. After a kamikaze cocktail[2] at Grise's apartment,

---

1. In addition to her claim for damages arising from her injuries and defendants' actions, plaintiff has filed suit on behalf of her minor daughter seeking recovery for loss of parental society and companionship.

2. A kamikaze cocktail is an alcoholic beverage consisting of triple sec, vodka, and lime juice.

the two left in Grise's 1975 red pickup truck to meet defendants for dinner at a pizza restaurant in Smithfield, Rhode Island. At the restaurant, both the twenty-four-year-old Grise and the twenty-two-year-old plaintiff consumed two margaritas, along with their pizza. After dinner, defendants invited plaintiff and Grise, who is Barbara's nephew, to their home. When they arrived at around 8 p.m., Maurice produced two pitchers of Long Island Iced Tea—a concoction composed of vodka, tequila, rum, gin, and Crème de Menthe. He fortified the beverages with Cabo Wabo Tequila[3] and began pouring.

The record before us discloses that defendants served these drinks to plaintiff and Grise "non-stop" for more than three hours. The plaintiff contends that Maurice encouraged her to continue drinking, telling her: "You're Irish. You can do better than that." The amount of alcohol that Grise consumed is in dispute, as plaintiff informed police from her hospital room that the couple only "had a couple a drinks,"[4] and that it was Grise who poured the Cabo Wabo. The plaintiff later recalled consuming eight drinks at the Omar residence, and she admitted that she was "blurry-eyed" and Grise was staggering when they left in the red truck.

The two drove less than a mile to the home of plaintiff's aunt, intending to pick up plaintiff's niece. However, plaintiff's aunt refused to allow her daughter to leave with plaintiff because she believed that plaintiff was drunk. Undaunted, a visibly intoxicated plaintiff left her aunt's home with the inebriated Grise at the wheel. After driving a short distance, Grise crashed his vehicle into a utility pole and surrounding rock on Old River Road in Lincoln, Rhode Island. At the scene of the accident, Grise was observed staggering, with a strong odor of alcohol on his person. Blood alcohol tests administered at Rhode Island Hospital later that night indicated that plaintiff's blood alcohol was 0.261 and that Grise's was 0.196.[5]

The plaintiff suffered severe injuries, resulting in the amputation of her left leg. On November 5, 2002, a criminal information was filed, charging Grise with two felonies—operating a vehicle under, the influence of alcohol, res injury, in violation of G.L. 1956 § 31–27–2.6, and driving to endanger, resulting in serious bodily injury, in violation of § 31–27–1.1. On June 24, 2003, Grise entered into a plea agreement to both counts and was sentenced to ten years at the Adult Correctional Institutions, with two years to serve and the rest suspended, with probation. The defendants' brief indicates that plaintiff settled a personal-injury claim against Grise for $300,000.

On October 27, 2003, plaintiff filed suit against defendants alleging negligence and civil liability for crimes and offenses, under G.L.1956 § 9–1–2.[6] A Superior Court trial

3. Cabo Wabo Tequila was described as a high-proof alcohol that Maurice recently had purchased in Mexico for $130.

4. The plaintiff alleges that this information was incorrect and that she was medicated and under significant stress at the time.

5. A second blood sample taken from Grise, thirty-five minutes after the first, resulted in a 0.185 blood alcohol reading.

6. General Laws 1956 § 9–1–2, "Civil liability for crimes and offenses," provides:

"Whenever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made; and whenever any person shall be guilty of larceny, he or she shall be liable to

justice granted summary judgment for defendants, holding that Rhode Island has not embraced social-host liability for drunk-driving casualties, in the absence of an accompanying special relationship. *See Ferreira v. Strack*, 652 A.2d 965, 967 (R.I. 1995) (holding that, absent a special relationship, social hosts do not owe a duty of care to individuals injured by an intoxicated driver who previously was drinking at the defendants' home). Judgment was entered on October 10, 2006, and plaintiff timely appealed.

## Standard of Review

 This Court reviews the grant of summary judgment on a *de novo* basis. *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003). "[W]e will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.2005) (quoting *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002)). "The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of facts in dispute." *The Providence Journal Co. v. Convention Center Authority*, 774 A.2d 40, 46 (R.I.2001) (citing *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996)). This burden of proof requires the opposing party to set forth specific facts demonstrating that a genuine issue of material fact exists. *Id.* (citing *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)).

the owner of the money or articles taken for twice the value thereof, unless the money or articles are restored, and for the value thereof in case of restoration."

## Analysis

Before this Court, plaintiff's overarching argument is that the trial justice erred when she refused to recognize social-host liability in the context of this case. The plaintiff looks to the Court to create a new cause of action—one that imposes a duty on a social host to protect a person from injury resulting from alcohol consumption by either a guest or a drunk driver who leaves the party and is involved in an accident that causes injury or death. Although plaintiff acknowledges that this Court never has recognized social-host liability, she implores us to look to the Restatement (Second) of *Torts* and what she characterizes as sound public policy to "creat[e] a new frontier that will better today's society and provide a remedy for a victim" in circumstances in which the social host's hospitality leads to "an atmosphere of reckless drinking and driving." Although we are sympathetic to plaintiff and to some of the public-policy issues that she addresses, we decline the invitation to overturn our well-settled precedent.[7] Whether an injured party should be able to maintain a cause of action arising from social-host liability rests with the Legislature, not the Court.

 To properly set forth "a claim for negligence, 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Mills v. State Sales, Inc.*, 824 A.2d 461, 467 (R.I.2003) (quoting *Jenard v. Halpin*, 567 A.2d 368, 370 (R.I. 1989)). Whether a defendant is under a legal duty in a given case is a question of law. *Martin v. Marciano*, 871 A.2d 911,

7. We acknowledge counsel's advocacy and comprehensive legal research in this case.

915 (R.I.2005) (citing *Volpe v. Gallagher*, 821 A.2d 699, 705 (R.I.2003)). "If no such duty exists, then plaintiff's claim must fail as a matter of law." *Selwyn v. Ward*, 879 A.2d 882, 886 (R.I.2005). Because there is no set formula for finding legal duty, such a determination must be made on a case-by-case basis. *Martin*, 871 A.2d at 915 (citing *Volpe*, 821 A.2d at 705). As part of this analysis, we look to "all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." *Volpe*, 821 A.2d at 699 (quoting *Hennessey v. Pyne*, 694 A.2d 691, 697 (R.I.1997)). In granting summary judgment, the trial justice stated that "plaintiff hasn't come forward with duty triggering facts that I, as a lower court judge, can recognize and impose liability thereon." We agree with this ruling.

We consistently have refused to adopt the principle that a social host owes a duty to a third party for injuries suffered by an intoxicated guest who was imbibing at his or her home, and we have only imposed such a duty where a special relationship exists. *Ferreira*, 652 A.2d at 968; *see Marty v. Garcia*, 667 A.2d 282, 283 (R.I. 1995) (affirming trial justice's decision dismissing case because the claim rested on social-host liability, a concept that the Court declined to adopt). Although we have recognized social-host liability in limited circumstances, we have done so when alcohol was illegally provided to minors and injuries resulted. Such a special relationship is not present in the case on appeal.

■ This Court recently set forth the elements defining a special relationship in *Martin*, 871 A.2d at 914, in which the plaintiff was a guest at a high school graduation party at which alcoholic beverages, including keg-beer, were readily available to numerous underage partygoers. An altercation arose, fueled by alcohol, during which the plaintiff was struck in the head by a party-crasher wielding a baseball bat. *Id.* We held that a party host who makes alcohol available to an underage guest owes a duty of reasonable care to protect the guest from harm, including a criminal assault. *Id.* at 915–16. Such a duty exists as a matter of law between the host and her underage guests because allowing underage drinking gives rise to a special duty, based on both public policy and foreseeability grounds. *Id.* at 916–17. "To avoid assuming a duty of protection, the adult property owner must simply comply with existing law and refuse to provide alcohol or condone underage drinking on his or her property." *Id.* at 916. Although supplying underage people with alcohol at a high school graduation party may trigger a special relationship, serving alcohol to an adult guest does not.

Furthermore, we have held that, even if minors unlawfully are furnished with alcoholic beverages, this act alone is insufficient to trigger a special relationship, if the resultant risk of injury is not foreseeable. *See Selwyn*, 879 A.2d at 888–89 (in which this Court reasoned that, even though a vendor illegally sold alcohol to minors, the seller was not liable because the alcohol was used in an unforeseeable manner when another minor deliberately ignited it).

This Court also recognized a duty-triggering special relationship, in *Volpe*, in which the decedent's family brought a wrongful-death action against the mother of a mentally ill son, who shot and killed his next-door neighbor. *Volpe*, 821 A.2d at 702–03. The plaintiff alleged that the defendant-mother was negligent in permitting her son to keep firearms and ammunition on her property, where the son resided, believing that he suffered from

paranoid schizophrenia. *Id.* A jury found the mother liable for the wrongful death of the neighbor, but the trial justice granted a motion for a new trial. *Id.* at 704. This Court, relying on principles of premises liability, held that the defendant had a duty to protect the neighbors from the immediate risk posed by the weaponry housed on her property. *Id.* at 709–11. Here, we are not confronted with an issue of premises liability, nor is there a suggestion that plaintiff's injuries resulted from an unreasonably dangerous condition that defendants allowed on their property.

This case is more akin to *Ferreira*, 652 A.2d at 967, a negligence action seeking damages for the injuries suffered when the plaintiffs were struck by an intoxicated guest. Because there was no special relationship in *Ferreira* giving rise to a duty on the part of the hosts, we concluded that the defendants were not liable for "the negligent operation of a motor vehicle by an adult guest if the negligence is caused by the guest's intoxication." *Id.* In the case on appeal, although Grise was an invited guest who consumed alcohol served by defendants—as distinguished from the drunk driver in *Ferreira* who consumed alcohol he personally had brought to the party—there nonetheless was no special duty-triggering relationship between the host and his or her guests. After careful review of the record in this case, we decline to overturn our well-settled precedent, and will adhere to our venerable principle of *stare decisis.* The issue of liability *vel non* for social hosts whose guests cause harm is a matter that belongs in the Legislature.

The plaintiff also contends that the trial justice erred in refusing to find civil liability for aiding and abetting a criminal act. The plaintiff alleges that Maurice verbally goaded her into consuming significant quantities of alcohol at his home and even facilitated that process by pouring more Cabo Wabo into her drinks. However, she failed to establish that this conduct constituted aiding and abetting a criminal act. Section 9–1–2 of the General Laws imposes civil liability for injuries resulting from a criminal act. But to prove criminal liability for aiding and abetting a criminal act, under G.L. 1956 § 11–1–3,[8] a party must show two distinct elements: (1) "the alleged aider and abettor share in the criminal intent of the principal," and (2) "a community of unlawful purpose" exists between them. *Curtin v. Lataille*, 527 A.2d 1130, 1132 (R.I.1987). In *Curtin*, we reviewed 4 Restatement (Second) *Torts* § 876(b) (1979), and concluded "that applying our criminal test of aiding and abetting to a civil action is consistent with the test set forth in the Restatement." *Curtin*, 527 A.2d at 1132. The trial justice, in the case before us, correctly found that "plaintiff has not been able to come forward with some facts to demonstrate that these people affirmatively participated in the sense that we use when we talk about aiding and abetting in the context of criminal conduct."

The record before us is devoid of evidence that demonstrates any intent by the Omars to commit a crime. Thus, the crime of aiding and abetting is not present. Even when viewed in the light most favorable to plaintiff, this was a gathering of adults in a social setting where some adults knowingly over-indulged in alcoholic

8. General Laws 1956 § 11–1–3 provides: "Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title."

beverages. Although plaintiff alleges that she was encouraged to drink excessively while at the Omars' home, this does not amount to willful participation or a community of unlawful purpose by defendants in Grise's crime. Because defendants were not engaged in a criminal act or offense when they furnished alcoholic beverages to their adult guests, the crime of aiding and abetting is not present on this record.

█ Finally, we reject plaintiff's argument that G.L. 1956 chapter 14 of title 3, the "Rhode Island Liquor Liability Act," imposes liability on a private individual for serving alcohol in a social setting. We note that this act creates a cause of action against liquor licensees or their employees or agents. The statutory language enumerates two distinct defendants:

"(1) An alcoholic beverage retail licensee, and any employee or agent of this licensee; or

"(2) Any person who, at the time of an act giving rise to liability, as provided in § 3–14–6, was required by law to have had an alcoholic beverage retail license under chapter 7 of this title and any employee or agent of that person." Section 3–14–5.

It is undisputed that defendants were neither licensees, nor required to be licensed. Thus, § 3–14–5 does not apply to them. "To inject a judicial remedy * * * into a statute that plainly does not contain a remedy, particularly when there is no evidence to suggest that the Legislature had intended to create a cause of action, 'would be interpretation by amendment.'" *Bandoni v. State*, 715 A.2d 580, 585 (R.I.1998) (quoting *Rhode Island Federation of Teachers, AFT, AFL–CIO v. Sundlun*, 595 A.2d 799, 802 (R.I.1991)).

█ This Court frequently has recognized the public policy concerns surrounding drunk driving and the resulting carnage on our highways. *See DiSalvo v. Williamson*, 106 R.I. 303, 305–06, 259 A.2d 671, 673 (1969) (characterizing the adverse effects of driving while intoxicated as "carnage occurring on our highways which is attributable to the persons who imbibe alcohol and then drive"). However, "it is not the function of this Court to act as a super legislative body and rewrite or amend statutes already enacted by the General Assembly." *Bandoni*, 715 A.2d at 585. Accordingly, we are of the opinion that summary judgment was warranted in this case.

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.