Diane M. **RIVERS** et al.

v.

George **POISSON** et al.

No. 99–159–Appeal.

Supreme Court of Rhode Island.

Nov. 3, 2000.

---

Robert A. Mitson, Woonsocket, Craig S. Letourneau, for Plaintiff.

Steven A. Izzi, Ian C. Ridlon, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on September 27, 2000, pursuant to an order of this Court that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining

the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

The plaintiff, Diane M. Rivers (Rivers or plaintiff), has appealed from a partial summary judgment entered in favor of all defendants, except George Poisson. These defendants included the pastor of St. Aloysius Church and the Roman Catholic Bishop of the Diocese of Providence (collectively hereinafter referred to as employers). The facts of the case insofar as pertinent to this appeal are as follows.

In June 1994, Rivers began receiving harassing telephone calls between 7 a.m. and 7:30 a.m. in which the caller would say nothing, and then hang up. These telephone calls continued on a daily basis on weekdays until September 1994, at which time Rivers contacted the Woonsocket Police Department to determine the origin of the calls. A "trap" was placed on her line, and it was ultimately determined that the calls were being made by George Poisson (Poisson), a neighbor of Rivers and the janitor at St. Aloysius Church, the church that Rivers attended. Poisson placed the calls both from his home telephone and from a telephone in the elevator at the church. Poisson entered a plea of *nolo contendere* to one count of making harassing telephone calls in violation of G.L.1956 § 11–35–17. The employers had no knowledge of Poisson's activities until Rivers filed a report with the Woonsocket Police Department.

After his arrest and plea, Poisson continued in his employment at St. Aloysius Church. Although Poisson has not made any harassing telephone calls to Rivers or any other party since October 1994, Rivers' father, a member of the St. Aloysius Finance Committee, demanded that the employers terminate Poisson's employment to minimize any further contact between Poisson and Rivers. Rivers, who has been diagnosed with chronic post-trau-

matic stress disorder, attributes her continuing emotional distress to Poisson's very presence at the church. Because the employers refused to terminate Poisson's employment, Rivers stopped going to the church. Before June 1994, Rivers had been a member of the church for thirty-nine years.

Rivers and her husband, Jackson V. Rivers (collectively hereinafter referred to as the Rivers), filed suit on July 12, 1996. In an amended complaint, they raised four counts: intentional infliction of emotional distress against Poisson (count 1), negligent supervision of an employee (count 2), negligent retention of an employee (count 3), and loss of consortium (count 4). Thereafter, employers filed a motion for partial summary judgment on counts 2, 3, and 4. That motion was granted and Rivers appealed.[1]

On appeal, Rivers argues that a genuine issue of material fact exists as to whether employers were negligent in supervising Poisson during the course of his criminal harassment of Rivers, and as to whether employers were negligent in retaining Poisson in their employ after Poisson's criminal course of conduct was discovered. Citing *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 474 A.2d 436 (R.I.1984), Rivers argues that an employer has a duty to refrain from hiring and/or retaining an employee who is unfit or incompetent. She argues that the fact that Poisson was making harassing telephone calls renders him unfit, and that employers should have discovered his unfitness because his duties at the church did not require the use of the telephone. As to her negligent retention claim, Rivers argues that employers were negligent in retaining Poisson because they knew of his criminal conduct and because they knew that his continuing employment at the church was causing Rivers stress.

---

1. Only Diane Rivers' appeal is properly before the Court at this time because her husband's appeal was dismissed after he failed to pay the required filing fee.

■ "[T]his Court reviews the granting of a summary judgment motion on a de novo basis." *DePasquale v. Venus Pizza, Inc.,* 727 A.2d 683, 685 (R.I.1999) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). We shall affirm a trial justice's grant of summary judgment if, "after reviewing the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences from that evidence in support of the nonmoving party's claim, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of the controlling law." *DePasquale,* 727 A.2d at 685.

In *Welsh,* we recognized the viability of a cause of action against an employer for the negligent retention and/or supervision of an employee when a third party is injured by the acts of unfit or incompetent employees. We held that an employer has a duty "to exercise reasonable care in selecting [and retaining] an employee who, as far as could be reasonably known, [is] competent and fit for the [employment]." *Welsh,* 474 A.2d at 440. The amount of care deemed to be "reasonable," depends on the risk of harm inherent in the employment—"[t]he greater the risk of harm, the higher the degree of care necessary to constitute ordinary care." *Id.* (citing *Leonard v. Bartle,* 48 R.I. 101, 104, 135 A. 853, 854 (1927)).

■ In *Welsh,* the defendant was engaged by the plaintiff to provide security for the plaintiff's manufacturing facility. *See Welsh,* 474 A.2d at 438. The facility was made up of two buildings across the street from each other, and contained sizable quantities of gold. Pursuant to their contract, the defendant assessed the security requirements of plaintiff's premises and provided one uniformed and unarmed security officer twenty-four hours a day. Between August 24, 1973 and October 7, 1973, three thefts at plaintiff's facility resulted in losses of gold in excess of $200,-000. The first two thefts occurred while one of defendant's employees was guarding the facility during the night shift. That employee admitted the perpetrators into the facility, and later testified that he provided vital information to parties who subsequently broke into the facility a third time. We held that the defendant was liable to the plaintiff. The defendant "was offering a service the very essence of which required honest, trustworthy, and reliable personnel." *Welsh,* 474 A.2d at 440-41. Accordingly, the defendant should have conducted a reasonable investigation into the employee's work experience, background, character, and qualifications. *See id.* at 440. Furthermore, the defendant should have trained the employee, who had no prior experience as a security guard, and should have supervised him while he was in the defendant's employ. *See id.* at 443. The trial justice did not err in granting summary judgment in the instant case. The plaintiff failed to introduce any evidence to support either of her negligence claims. Concerning her negligent supervision claim, plaintiff in the instant case failed to demonstrate any evidence that would allow a reasonable jury to determine that the failure to monitor Poisson's use of the telephone was a breach of ordinary care in supervising a church janitor. The plaintiff's only support for this claim was that, as a janitor, Poisson should not have been using the telephone. However, a review of the record reveals that the employers were not even made aware of the telephone calls until the day plaintiff filed her report with the Woonsocket Police Department, at which time the telephone calls ceased. Furthermore, there is no evidence to suggest that Poisson's janitorial position necessitated a heightened degree of supervision.

■ Concerning her negligent retention claim, plaintiff failed to demonstrate any evidence that would allow a reasonable jury to determine that Poisson was unfit or incompetent to perform his duties as a janitor. There is absolutely no evidence that Poisson's criminal conduct affected his

ability to be a good janitor, and no allegations have been made that Rivers, or any other party, has received harassing telephone calls since October 1994. Although it might be admirable for a church to employ only people with high moral integrity and the most unblemished character, there is no evidence to suggest that Poisson's criminal activity affected his ability to maintain the church in a state of cleanliness and to perform the usual janitorial services.

In summary, the trial justice determined that the employers had no duty to control the use of the telephone by the janitor in the absence of any knowledge that the janitor would use such telephone to make harassing calls to the plaintiff. After the intervention of the Woonsocket Police, it is undisputed that the telephone calls ceased in respect to the plaintiff. Consequently, employers owed no duty to plaintiff to discharge Poisson. The existence or nonexistence of a duty is a question of law to be determined by the Court. *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I.1987). In concluding that, on the undisputed facts of this case, no duty existed on the part of the employers to anticipate that telephone calls would be made to the plaintiff and that no duty existed after the termination of these telephone calls to discharge Poisson, the motion justice was clearly correct as a matter of law.

Therefore, the plaintiff's appeal from the partial summary judgment is denied and dismissed. The judgment entered in the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.