DECISION
This matter came on for trial before the Court in June and July 2008. Mr. Nye claims ownership of a parcel adjacent to his own property and seeks to recover damages for evergreens which were harmed near the property line.
 Finding of Facts
The Court makes the following findings of facts.
William J. Nye (plaintiff) is the owner of property located at 251 Tiffany Avenue in Warwick, Rhode Island. The property has been in his family since 1964. Mr. Nye resided on the property as a child during the 1960s and early 1970s. Thereafter, he resided on or visited the family home periodically, and purchased it from his father's estate in 2003, after both of his parents passed away.
Mr. and Mrs. Brousseau (defendants) purchased their home at 265 Tiffany Avenue in August 2003. After moving in, Mr. Brousseau promptly began clearing the overgrown brush on the property. The east side of the Brousseau property borders the west side of the Nye property for about 125 feet. In the fall of 2003, Mr. Brousseau spoke to Mr. Nye about the shrubbery near the border in the front of the homes. While *Page 2 
each of them was uncertain about the boundary, the gentlemen agreed that several shrubs, which had grown to over fifteen feet, could be removed. The shrubbery was removed.
In the spring of 2004, the gentlemen agreed that some growth on the northeast of Mr. Brousseau's property could also be removed. Mr. Brousseau completed this removal. When Mr. Brousseau discussed his intention to remove the brush near the border and to plant new shrubs, they began to discuss the boundary again. Mr. Nye suggested surveying the property as neither man knew the exact boundary.
In the fall of 2005, Mr. Brousseau again approached Mr. Nye with his plan to remove the remaining large brush along the border and replace it with new arborvitae. The men agreed and Mr. Nye even assisted Mr. Brousseau in removing some stumps. When Mr. Brousseau mentioned the possibility of a retaining wall, Mr. Nye again raised the need for a survey. The gentlemen agreed to do a survey, and to divide the costs evenly.
Mr. Brousseau obtained prices for surveyors and enlisted Mr. Gardiner. After Mr. Gardiner placed a survey marker in Mr. Nye's driveway, Mr. Nye became displeased. Mr. Nye insisted the marker was incorrect but said little else. Mr. Nye never paid for his share of the Gardiner survey. Mr. Nye never informed the Brousseaus that he owned the remaining large yews or the property under them. Mr. Nye never obtained another survey, nor did he place any other surveyor's survey into evidence. Mr. Brousseau delivered a copy of the Gardiner survey to Mr. Nye one week later. In June of 2006, Mr. Brousseau asked Mr. Nye to remove trash cans from the front of the property. Eventually, Mr. Brousseau moved them himself, and the men exchanged words. *Page 3 
Relying on the survey, Mr. Brousseau continued his improvement projects. There were nine remaining yews on the property, all overgrown, and some in poor condition. Mr. Brousseau cut nine separate plants on August 14, 2006: two were reduced to stumps and the other seven were a height of about four feet. When Mr. Nye returned home he contacted the police, who departed after seeing the survey. Mr. Nye then served Mr. and Mrs. Brousseau with a complaint on August 16, 2006.
Prior to the service of process, Mr. and Mrs. Brousseau did not realize that Mr. Nye had filed suit, or was claiming that he had an ownership interest via "acquiescence." Mr. Brousseau performed this work in 2006 not knowing suit was pending, and simply to continue to beautify his property. His acts were not malicious nor did they amount to acts of criminality.
By July 2008, the remaining shrubs were healthy and were growing more orderly than they were as unkempt, tall shrubs. Other facts will be set forth below as may be necessary.
 Discussion of Testimony
Mr. Nye's first witness was his brother, Robert J. Nye. Robert Nye lived on the property through 1975, and regularly visits the property several times per year for family gatherings. Robert Nye described the properties and focused on the use of the disputed area during the 1960s and 1970s. He explained how his mother had planted a row of small evergreens on the western side of his property sometime between 1964 and 1966. He then reviewed the variety of photographs entered as exhibits which illustrate the growth of the yews. The photographs also show the Nye family's use of the driveway at *Page 4 
the southwest corner of their property. Robert Nye testified that by the mid-1990s, the shrubs had grown to over 12 feet in height. Cross-examination was minimal. Though he is obviously close to the plaintiff, the Court found Robert Nye to be credible and careful in his testimony. During Robert Nye's testimony, various photographs and copies of deeds were submitted as full exhibits.
A tax assessor testified to verify the authenticity of a plat map, but confirmed that it was not a survey map. Officer Daniel O'Connell of the Warwick Police testified concerning his dispatch to the property on August 14, 2006, shortly after some of the yews were trimmed. When he saw a survey he refrained from further action. While the Court found Officer O'Connell credible, he clearly relied on his police report to refresh his memory.
Steven Pilz, a landscape architect, testified for Mr. Nye concerning the damage to the shrubbery. Mr. Pilz was retained by Mr. Nye to determine the value of the damage to the shrubbery. He assumed that the plantings were entirely on Mr. Nye's property, though he relied in part on a survey performed by Mr. Gardiner and discussed at length below. Mr. Pilz's testimony was exhaustive and meticulous, largely because the pro se plaintiff was unable to qualify him as an expert. Mr. Pilz discussed his certification and qualifications, and the standard he used to value the damage to the shrubbery and the results. Mr. Pilz applied four factors to compute the value of the damage as if they were completely objective determinations (species, condition, size and location). Nevertheless, the Court was left to question credibility as some of these conditions were subjective and not easily measurable by Mr. Pilz. He always assumed a larger size to result in a larger value, never mentioning the possibility of overgrowth. The condition *Page 5 
was clearly in question as the shrubs were untrimmed for decades. Mr. Pilz considered the "pre-casualty" shrubbery to be of good health, although one plant was dead, and he never saw them before Mr. Brousseau trimmed them. Mr. Pilz was clearly qualified and knowledgeable about his field. While Mr. Pilz testified in a forthright, clear and courteous manner, his analysis was not always clear. He never explained the logic of the methodology applied or why certain factors were used.[1] This gave the Court considerable reason to question the results of his valuation. Mr. Nye attempted to use Mr. Pilz to discuss the purported boundary, but he was obviously not qualified on survey issues, and not firm on his conclusions. Mr. Pilz concluded that the damage to evergreens totaled $3,292.
David Gardiner was then called by Mr. Nye, under subpoena. Mr. Gardiner was originally retained by Mr. and Mrs. Brousseau to prepare a survey. While Mr. Nye agreed to share the cost, he later retracted his commitment. After Mr. Gardiner sat in the courtroom for several days, apparently without any payment from Mr. Nye, Mr. Nye's tactics were questioned. The survey was made a full exhibit at Mr. Nye's request. There was never any reason to question Mr. Gardiner's credibility or the validity of his survey. The survey (exhibit 25) clearly reflects that the southernmost bushes are on the Brousseau propety. The midline of the bushes, and therefore the trunks, are on the Brousseau property.
Mr. William Nye then testified in the narrative. He described his childhood at the property, his visits there through his early adult life, and his return to reside on the property in 1992. He discussed photographs already discussed by his brother. He *Page 6 
asserted that he considered the land to be his family's property, and described how the family used the driveway and land up to the shrubbery. He testified that the evergreens eventually grew tall and irregular and were rarely maintained. The only yews he discussed trimming were those near the driveway (the shrubs removed by Mr. Brousseau in 2003 with Mr. Nye's consent).
Mr. Nye acknowledged that he agreed to allow Mr. Brousseau to move some of the bushes on the southern side, and he even assisted in removing a stump. Prior to this, he was not aware of any dispute concerning use of the land to the east of the bushes, though it is not clear if anyone attempted to use some of this land. He acknowledges he "was not a diligent gardener" but the Brousseaus indicated their desire to clean the property as soon as they arrived. Apparently, they inquired about who owned the plants, though Mr. Nye never indicated what his response was. He agreed to allow bushes to be cut near the driveway. The Brousseaus planted arborvitaes which Mr. Nye agreed were more aesthetic. Mr. Nye agreed the bushes could be trimmed in height. By his own testimony, Mr. Nye voiced no objection until Mr. Brousseau removed more brush adjacent to the driveway. At first, Mr. Nye let it go, then questioned the boundary and questioned the survey results.
Mr. Nye's testimony was interrupted by the presentation of the video depositions of Paul Linterer and V. Tang Linterer, the former owners of the Brousseau property. Mr. Linterer "assumed" that the shrubbery was the border. He described the bushes as "ugly" and "they sure were big." Mr. Nye (plaintiff's father) never objected to Mr. Linterer trimming the bushes. The Linterers were pleasant and far more cooperative to Mr. Nye. *Page 7 
On cross-examination they became far more defensive. Armed with the affidavits that had been prepared by Mr. Nye, they were well-prepared.
Mr. Nye then continued his narrative. He added that he cared for the bushes in the 1990s and put his trash bins near them. He never indicated that he limited Mr. Brousseau's work but noted he was surprised when some shrubs were removed. He acknowledged that he agreed to pay for a survey of the centerline, but never contributed to the survey as it was the entire lot. On cross examination, he acknowledged that he helped with some trimming, he only objected to the cutting of the 9 bushes, though he found light trimming acceptable and he permitted all other work.
While Mr. Nye's testimony was obviously self-serving, he appeared credible, thorough and earnest. There was no reason to question his veracity.
Mr. Brousseau's testimony was succinct. He acknowledged trimming the bushes alone. He described them as overgrown and 15 to 18 feet in height. He was cooperative with Mr. Nye throughout and was surprised that Mr. Nye refused to pay the surveyor as he had agreed to do. Mr. Nye suggested a survey to locate the boundary as he did not know the boundary lines. When Mr. Brousseau obtained the survey, Mr. Nye objected to some of the results. Mr. Brousseau admitted moving Mr. Nye's trash cans.
Mr. Brousseau was thorough, clear and forthright. He admitted to using poor language and being agitated. Interestingly, when being cross-examined by Mr. Nye, he asserted that Mr. Nye had no idea where the boundary was, and agreed to pay for some of the survey — an issue Mr. Nye never refuted. Even with this difficult circumstance, Mr. Brousseau was highly credible. *Page 8 
 ANALYSIS AND CONCLUSIONS OF LAW
It is disconcerting, at best, to attempt to construe the causes of action set forth in Mr. Nye's complaint. The Court has attempted to reasonably accommodate the pro se litigant to the best of its ability, but this can be challenging when attempting to construe what relief he now requests below.[2] The Court therefore extracts the following claims from Mr. Nye's pleadings.
A. Trespass
First, the Court addresses any trespass claim. Mr. Nye appears to contend that Mr. Brousseau trespassed in cutting the brush, removing the brush in August 2006, and moving the trash or recycle bins. The Rhode Island Supreme Court has defined a trespasser as
 "`one who intentionally and without consent or privilege enters another's property.'" Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995) (quoting Black's Law Dictionary 1504 (6th ed. 1990)).
At the time of these acts, Mr. Brousseau had a survey, which he had shown to Mr. Nye, illustrating his ownership of the disputed area. At best, Mr. Nye was making a vague claim about a different, undescribed boundary. Mr. Brousseau and Mr. Nye agreed to a survey to clear the confusion of where the boundary line was. The survey establishes that the boundary line of record included some of the brush. It was reasonable for Mr. Brousseau to rely on that boundary line once he received it (in November 2005) as Mr. Nye had previously agreed to a survey to resolve the boundary issue. It was not until the *Page 9 
brush was cut (in August 2006) that Mr. Nye became uncooperative and Mr. Brousseau was made aware of Mr. Nye's claim of ownership. Mr. Brousseau was served with the summons in this case shortly after that cutting. Prior to the August, 2006 cutting Mr. Nye cooperated with the cutting and all of Mr. Brousseau's work. Mr. Nye even assisted with some of the work. At no time did he assert ownership or direct Mr. Brousseau to go no further. Until they were surprised with the complaint, Mr. and Mrs. Brousseau knew of no adverse claim of ownership.[3] All that had been done through that time was consensual.
To recover for trespass, a party must show (1) the adverse party intentionally entered onto the owner's property; and (2) plaintiff had rightful possession of such property. State v. Verrecchia, 766 A.2d 377
(R.I. 2001); Berberian v. Avery, 99 R.I. 77, 205 A.2d 579 (1964). One who has consent or privilege and enters onto another's property is not a trespasser. Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995). However, when Mr. Brousseau entered upon the property to move the trash and recycle bins in June 2006, the situation was quite different. Mr. Brousseau knew he was passing onto property which was clearly owned by Mr. Nye. That trespass was actionable. While words were exchanged, Mr. Nye showed no damages or harm from this trespass. Although an action for injunction may lie, there was no showing of any monetary damage, nor were damages requested. An action for trespass is not contingent upon actual damage or actual injury, Mesolella v. City of Providence,508 A.2d 651, 668 (R.I. 1986). *Page 10 
Therefore, while no damages are awarded, an injunction preventing further trespasses is appropriate. An injunction shall issue preventing Mr. Brousseau from passing onto Mr. Nye's property, as set forth below.
B. Cutting of the Brush.
Mr. Nye appears to seek damages for the cutting of the shrubbery, but the legal cause of action he claims is unclear.
If Mr. Nye is claiming an action of negligence, he must establish a breach of a duty. Montouri v. Narragansett Electric Co., 418 A.2d 5
(1980). As indicated, Mr. Nye did not establish that Mr. Brousseau knew of a claim of ownership in the shrubbery, Indeed, the survey demonstrates that much of the shrubbery was on the Brousseau property. Accordingly, the Court finds that the Brousseaus did not owe Mr. Nye a duty of care at the time of the trimming of the shrubbery, nor was a duty breached. Accordingly, no negligence action lies.
If Mr. Nye is claiming an action of conversion, he bears a significant burden of proof. In a recent case, our high court reviewed the existing case law to set forth the elements for a conversion action:
 "To maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." Montecalvo v. Mandarelli, 682 A.2d 918, 928 (R.I. 1996). Then, "the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." Fuscellaro v. Industrial National Corp., 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977). This intentional exercise of control over the plaintiff's chattel must "so seriously interfere with the right of another to control it that the [defendant] may justly be required to pay the other the full value of the chattel." Montecalvo, 682 A.2d at 928 (quoting Restatement (Second) Torts § 222(A)(1) at 431 (1965)). *Page 11 
 Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 97 (R.I. 2006).
Even though conversion is often classified as an intentional tort, our high court has dispensed with the need to establish intent.
 Nor does the fact that the cutting of the grass was unintentional, in the sense that it was done in ignorance of the location of the boundary line, make any difference. It was, nevertheless, a wrongful assumption of dominion over the property of the plaintiff in violation of his right. Donahue v. Shippee, 15 R.I., 453, 455
(1887), citations omitted.[4]
Mr. Nye has demonstrated that at the time of the August 2006 trimming, he was in possession of one-half of the shrubs near the border. These shrubs are numbered one through nine on the Pilz report (exhibit 24). Mr. Nye asserts that these shrubs establish the border. While Mr. Brousseau intentionally exercised control over this shrubbery by his significant trimming, there is no showing that he significantly damaged the shrubs. In fact, during the 2008 Court view, the shrubs appear to be more orderly, and in full growth.
While an action for conversion lies, the Court limits the valuation of the damage to the 9 shrubs to $2200. It does so after considering Mr. Pilz's conclusions in depth, and recognizing that the shrubbery was overgrown, untrimmed, minimally used, and in poor condition prior to Mr. Brousseau's cutting. Further, Mr. Brousseau's significant cutting returned the shrubs to a vigorous[5], orderly growth and aesthetic height and width. For the conversion, Mr. Nye is therefore awarded one-half of the value of the damage (as one-half of the shrubbery is on his side) totaling $1,100. *Page 12 
Mr. Nye may also be seeking exemplary damages. "[T]he party seeking punitive damages has the burden of producing evidence of such willfulness, recklessness or wickedness on the part of the party of fault, as amounts to criminality, for which the good of society and warning to the individual, ought to be punished." Palmisano v.Toth, 624 A.2d 314, 317 (1993). Citations deleted. Mr. Brousseau was attempting only to improve the property, and first sought to clarify the situation with his neighbor. The Court finds that he was not acting with the requisite willfulness, recklessness or wickedness and hence punitive damages are denied.
C. Title by acquiescence.
Mr. Nye is more specific in his memoranda regarding his claim of ownership. He claims that title was transferred via adverse possession or acquiescence. Again, his burden is clarified by recent case law:
 Pursuant to G.L. 1956 § 34-7-1, a person may acquire title to real property by adverse possession by satisfying a number of requirements. According to that statute, adverse possession occurs: "[w]here any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple. . . . "The statute provides that when a person fulfills those requirements, "the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever. . . ." Id. The party who asserts that adverse possession has occurred must establish the required elements by "strict proof, that is, proof by clear and convincing evidence." Corrigan v. Nanian, 2008 R.I. LEXIS 70 (R.I. June 9, 2008) citing Tavares v. Beck, 814 A.2d 346, 350 (R.I. 2003) (internal quotation marks omitted). *Page 13 
An exhaustive review of each element is unnecessary. While Mr. Nye and his family would sporadically trim their side of the yews to prevent them from affecting their driveway, the Nyes did no more. Accordingly, Mr. Nye failed to demonstrate by clear and convincing evidence, or even by a preponderance of the evidence, that their use of the disputed strip of land along the boundary was open, notorious or hostile.
Our Supreme Court has noted that plantings of tall shrubbery may be sufficient to convey notice of a claim of ownership.
 Therefore, "the claimant must prove that the purported boundary has been obvious to the allegedly acquiescing party." Generally, "the line must be marked in a manner that customarily marks a division of ownership," and the marker must have been used for boundary purposes. But, whether the boundary is sufficiently obvious to command notice is a question of fact, . . . Acampora v. Pearson, 899 A.2d 459, 465 (R.I. 2006) citing Barone v. Cotroneo, 711 A.2d 648, 649 (R.I. 1998), other citations omitted.
By way of this Court action, Mr. Nye has demonstrated that the row of shubbery has existed for a sufficient period of time, and as such a dominant marker to become sufficiently obvious to command notice of his claim of ownership. He is awarded ownership of a portion of that land upon his recording a new survey description contained in an order or survey suitable for recording. This boundary line must be approved by the Court prior to its recording. This Decision shall not be recorded and shall not suffice, in and of itself, to convey or confirm title.
The new boundary shall run from the granite bound, which is the northernmost border of the two properties, southward until the northernmost yew, then turning and running along the centerline of the yews to the southernmost yew, then turning slightly eastward and running directly to the point which is the *Page 14 
edge of Mr. Nye's paved driveway at its intersection with Tiffany Avenue. Any property interest clarified, confirmed or conveyed to Mr. Nye by this Decision shall be invalid until it is set forth in a Judgment, duly approved by the Court and sufficiently describing this line. A surveyor's description of this line will be necessary for the Court to approve the final judgment. Accordingly, a description of this new line shall be set forth by a surveyor, duly registered and licensed by the State of Rhode Island. That survey description shall be set forth in the Final Judgment, which shall be prepared by Mr. Nye.
D. Damages
Although Mr. Nye is awarded damages in this Decision, it would be unfair and inappropriate to award those damages, without recognizing the value of Mr. Gardiner's survey. Mr. and Mrs. Brousseau have prayed for the award of any other relief that the Court may deem equitable and just. An award of costs for the defendants-counterclaimant is most appropriate here.
The Brousseaus established that Mr. Nye breached an agreement to pay for one-half of the cost of the surveyor's bill. After that, he met with Mr. Gardiner, deposed Mr. Gardiner, subpoenaed Mr. Gardiner for trial, and had Mr. Gardiner wait for several days to testify. Moreover, Mr. Gardiner's survey was used as the basis for Mr. Pilz to prepare his damage report. As Mr. Gardiner's bill was paid for by Mr. and Mrs. Brousseau, the Court anticipates the Brousseaus will submit a bill of costs and be awarded one-half of the cost of the survey, as Mr. Nye originally agreed. *Page 15 
As the Brousseau prayed for broad, alternative relief, the Court finds for the Brousseaus on liability for the breach of his agreement to pay one-half of the cost of the survey. The Court reserves the right of Mr. Gardiner to seek remuneration from Mr. Nye.
 CONCLUSION
Judgment shall enter for Mr. Nye on the trespass count. No damages are awarded. An injunction shall issue as follows: Mr. Brousseau shall not enter into or upon Mr. Nye's real estate without the consent of Mr. Nye. This injunction shall stay in full force and effect until further order of this Court.
Judgment shall enter for Mr. Nye against Mr. Brousseau on a count of conversion. Compensatory damages of $1,100 are awarded on this count.
Judgment shall be awarded to Mr. Nye on his request to establish title by acquiescence. After the recording of a Judgment in a suitable form as set forth herein, the new border between the parties shall be established by this Court.
The Court denies defendants' request for declaratory judgment as the request for identifying the border has been appropriately addressed.
Judgment shall be awarded to the defendants on their request for an injunction as follows: Mr. Nye shall not enter into or upon Mr. and Mrs. Brousseau's real estate without the consent of either Mr. or Mrs. Brousseau. This injunction shall stay in full force and effect until further order of this Court. *Page 16 
Judgment is awarded to Mr. and Mrs. Brousseau on liability for a breach of the agreement to pay one-half of the cost of the survey. Mr. and Mrs. Brousseau shall be awarded damages equal to one-half of the cost of Mr. Gardiner's survey.
Judgment shall be awarded to the defendants on any negligence count and on all other counts.
[1] E.g. Mr. Pilz never described why the shrubs would have a different value depending on whether they were on the front, side or rear of the property, regardless of whether they were next to the house, in the yard or on a border.
[2] "Although we recognize that litigants appearing in our courts have the right to represent themselves, this guarantee does not mean that the procedural protections due both parties in a contested case will be disregarded, nor will we overlook a litigants [sic] failure to prove his or her case simply because the party elected to proceed pro se."Shorrock v. Scott, 944 A.2d 861, 863-864 (R.I. 2008). "[D]efendant's election to proceed pro se in this [case] does not excuse [him] from compliance with court processes." Sentas v. Sentas, 911 A.2d 266, 271
(R.I. 2006). All litigants, including those acting pro se, are "expected to familiarize himself or herself with the law[,] as well as the rules of procedure." Faerber v. Cavanagh, 568 A.2d 326, 330 (R.I. 1990).
[3] It was not until late 2007, at the earliest, that any vague assertion of title by acquiescence was claimed.
[4] See also Pike v Pike, 574 A.2d 741 (R.I., 1990).
[5] Mr. Pilz seems pleased with the condition of the shrubs after the trimming, referring to their growth as "vigorous" on page 12 of his report. *Page 1