DECISION
Before this court is an action by the Plaintiff, Kathleen Gemma (Plaintiff), asserting common law negligence and respondeat superior claims in the social host context against Defendants Dawn M. Simas (Simas), Town Hall Lanes, Inc., Fried Enterprises Inc., d/b/a Mr. Biggs Saloon, and Met-Cap Management LLC. Defendant Met-Cap Management LLC (Met-Cap) now moves for summary judgment for all remaining claims asserted by Plaintiff against Met-Cap.
 Facts and Travel
This Court has made the following findings of fact. On December 15, 2006, Simas attended a holiday party held at Town Hall Lanes in Johnston, Rhode Island and hosted by her employer, Met-Cap.[1] The party was scheduled from 1:00 p.m. to 4:30 p.m. and was to include "food, spirits and bowling." The party was organized by Colleen Quinn (Quinn), the executive assistant to Met-Cap's principal Owner, Kenneth Guarino (Guarino). Per an e-mail invitation, *Page 2 
Met-Cap employees were informed they could leave work at 12:45 p.m. to attend the party. Attendance, however, was not required. Employees supplied their own transportation to the party and approximately 85 employees out of the 400 employee work force attended the party. Regardless of attendance, all employees received their normal eight-hour compensation.
In addition to the provision of food and free bowling, Met-Cap made available to its employees an open bar for the duration of the party. The open bar was staffed by two Town Hall Lanes certified bartenders, Phyllis and Ron Santilli, who documented the number and type of drinks served throughout the afternoon.
During the party, Met-Cap provided bracelets to employees over the age of 21 years to designate who was allowed service from the open bar. The concept of "drink tickets" had been discussed by Met-Cap and Town Hall Lanes, but was not implemented for fear of coupon trading and subsequent over consumption of alcohol. At some point during the party, management for Met-Cap discussed the monitoring of alcohol consumption with one of the bartenders, Phyllis Santilli (Santilli). Quinn and Guarino told Santilli: "You guys are certified. Watch everyone. Make sure no one drinks excessive." Additionally, Quinn and Guarino stated that "they would be aware and if they see anything, they would let [the bartenders] know." Following this conversation, a number of Met-Cap employees ordered shots of liquor from the open bar. The bartenders felt this to be inappropriate and informed Quinn from Met-Cap. Quinn agreed that shots were inappropriate and instructed the bartenders that no shots were to be served. Quinn also informed the bartenders at some point to no longer serve two female employees because they were "acting loudly" although not visibly intoxicated. Quinn did acknowledge, however, that "it was not [her] responsibility to supervise adults. It was [her] responsibility to make sure we had a good time and be a nice, quiet party." *Page 3 
On the day of the party, Simas left work early to attend the party, arriving at Town Hall Lanes at some time between 1:30 p.m and 2:00 p.m. On the way to the party, Simas smoked at least half of a joint of marijuana. Simas admits that during the party, she consumed three beers and one "Jaeger Bomb."[2] Simas testified to staying at Town Hall Lanes until approximately 5 p.m., subsequent to the party's conclusion.
Simas, along with an estimated fifteen other Met-Cap employees, then proceeded by foot to Mr. Bigg's Saloon ("Mr. Bigg's"), which is owned and operated by Co-Defendant Fried Enterprises, Inc. and located within the same plaza as Town Hall Lanes. Simas believed that she was not impaired in any way.
Within minutes of departing Mr. Bigg's in her boyfriend's SUV, Simas' vehicle crossed the center line and collided head on with a Buick driven by then 17-year old Anthony Gemma. Anthony Gemma suffered extensive blunt impact brain and skull injuries and passed away as a result of the accident. Simas was treated for minor injuries at Rhode Island Hospital, where blood and urine samples were collected. Laboratory tests determined Simas' blood alcohol concentration (BAC) at 0.171% and confirmed the presence of marijuana in both her urine and blood. Simas was also found to be in possession of marijuana and pharmaceutical drugs.
Subsequently, Simas pled nolo contendre to charges of (1) driving under the influence, death resulting, (2) reckless driving, death resulting, and (3) possession of marijuana. Simas is presently serving a fifteen-year sentence at the Adult Correctional Institute.
 Legal Analysis
On a summary judgment motion, this Court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Chavers v. Fleet Bank *Page 4 
___, 844 A.2d 666, 669 (R.I. 2004). On such a motion, the court is to determine only whether a factual issue exists. It is not permitted to resolve any such factual issues. The emphasis is on issue finding, not issue determination. O'Connor v. McKanna,116 R.I. 627, 633, 359 A.2d 350, 353 (1976); Palazzo v. Big GSupermarkets, Inc., 110 R.I. 242, 245, 292 A.2d 235, 237 (1972);Slefkin v. Tarkomian, 103 R.I. 495, 496, 238 A.2d 742 (1968). "Summary judgment is appropriate if it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law." Chavers, 844 A.2d at 669. A party opposing a motion for summary judgment "`carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Id. at 669-70 (quotingUnited Lending Corp. v. City of Providence,827 A.2d 626, 631 (R.I. 2003)).
"In Rhode Island `negligence is the breach of a duty, the existence of which is a question of law.'" Ferreira v.Strack, 652 A.2d 965, 967 (R.I. 1995) (quoting Barrat v.Burlingham, 492 A.2d 1219, 1222 (R.I. 1985)). "Whether there exists a duty of care running from the defendant to the plaintiff is, therefore a question for the court and not the jury."Ferreira, 652 A.2d at 967 (quoting Banks v. Bowen's LandingCorp., 522 A.2d 1222, 1224 (R.I. 1987)). "If no duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." Ferreira, 652 A.2d at 967 (quotingBanks, 522 A.2d at 1224). Thus, what this Court must ultimately decide is whether the Plaintiff has shown that Met-Cap owed a duty to Anthony Gemma.
 Restatement (Second) Torts as Basis for Establishing aDuty
After receiving a partial summary judgment regarding social host liability, Plaintiff now seeks to establish that a duty existed between Met-Cap and the decedent, Anthony Gemma. *Page 5 
Specifically, Plaintiff maintains that Met-Cap created or assumed a duty by operation of § 321(1) and § 324(A) of the Restatement (Second) Torts. See Restatement (Second)Torts § 321(1), § 324(A) (1965). Under § 321(1), Plaintiff suggests that Met-Cap assumed a duty by creating an unreasonable risk, i.e., an open bar. See id. Likewise, Plaintiff uses § 324(A) in an effort to establish that Met-Cap assumed a duty to supervise or control the party when making decisions relating to the provision of alcohol. Seeid.
Plaintiff first contends that § 321 of the Restatement (Second)Torts serves the basis for imposing a duty on the defendant.[3] See Restatement (Second)Torts § 321 (1965). However, "[u]nder this section, it is only appropriate to impose a duty if the Defendant performed the initial act that subsequently created the unreasonable risk."Trusiani v. Cumberland and York Distributors, Inc.,538 A.2d 258, 263 (Me. 1988).
Here, Met-Cap organized and sponsored a Holiday Party. Met-Cap did not serve the alcohol to Simas. Thus, the organization and sponsorship of the party did not create an unreasonable risk of physical harm. The risk emanated from the over consumption of the alcohol, not the organization and sponsorship of the party. This rationale is in accord with the common law which views the "drinking of liquor, not the furnishing of it, [to be] the proximate cause of injury." Edward L. Raymond, Jr., Annotation, Social Host'sLiability for Injuries Incurred by Third Parties as a Result ofIntoxicated Guest's Negligence, 62 A.L.R. 4th 16 1988. To hold otherwise would create strict liability against employers who host holiday parties and provide varying degrees of alcohol service to invitees. *Page 6 
Plaintiff also cites § 324A for the assertion that Met-Cap assumed a duty to supervise employees and to control their drinking.[4]See Restatement (Second) Torts § 324(A) (1965). In support of this assertion, Plaintiff utilizes Guarino, Santilli, and Quinn's deposition testimony to suggest that affirmative acts by Met-Cap triggered a duty to supervise. Specifically, Plaintiff references three decisions as duty-triggering events. Plaintiff contends that choosing to have an open bar, disallowing service to two employees, and directing the bartenders to not serve shots equate to assuming a duty owed to third-persons. These actions did not assume a duty to supervise, but are the actions any party host has the authority to make. Holding otherwise would incentivize employer-hosts to not comment on any actions they might observe at their party for fear of liability. This would run counter to public policy as an employer would not notify the bartender if they observed a visually impaired guest as it may risk assuming a duty to supervise.
Similar to statutory construction, more recent and more specific sections of the Restatement should be given more deference by the courts. Plaintiff has put forth two sections of the Restatement (Second) Torts (1965) for supporting rationale as to why this Court should find a duty where none has existed in the state of Rhode Island. However, the Court finds Plaintiff's arguments unavailing in light of the Restatement (Third)Torts. See Restatement (Third) Torts: Liab. For Physical and Emotional Harm (2005). Section 7(b) specifically addresses the position the Court finds itself in the case at bar.[5] The first comment to § 7 explains *Page 7 
that "in some categories of cases, reasons of principle or policy dictate that liability should not be imposed. . .For example, a number of modern cases involve efforts to impose liability on social hosts for serving alcohol to their guests. . .Nevertheless, imposing liability is problematic because of its impact on a substantial slice of social relations." See Restatement (Third)Torts: Liab. For Physical and Emotional Harm § 7(b) cmt. a (2005).
The Restatement expresses no opinion regarding categorical no duty rules, but does "support a court's deciding this issue as a categorical matter under the rubric of duty, and a court's articulating general social norms of responsibility as the basis for this determination." Id. The Rhode Island Supreme Court has echoed this reasoning and has consistently held that the "imposition of liability upon social hosts for the torts of guests has such serious implications that any action taken should be taken by the Legislature after careful investigation, scrutiny, and debate."Ferreira, 652 A.2d at 968. When hearing arguments similar to those asserted now, our Highest Court acknowledged plaintiff counsel's advocacy and comprehensive legal research, but nonetheless "decline[ed] the invitation to overturn our well-settled precedent."Willis v. Omar, 954 A.2d 126, 129 (R.I. 2008).
 Banks Factors as Basis for Establishing a Duty
In addition to claiming that a duty has arisen under two sections of the Restatement (Second) Torts, Plaintiff asserts that a duty has arisen as a matter of law through an analysis of the Banks factors. Banks,522 A.2d 1222, 1225 (R.I. 1987).
In Banks, the Rhode Island Supreme Court acknowledged that "no clear cut rule exists to determine whether a duty is in fact present in a particular case." Id. In determining whether a duty exists, the Court considers the following factors: (1) the foreseeability of harm to the *Page 8 
plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach. Id.
Plaintiff applies the Banks factors to these circumstances and concludes that the "factors strongly support a finding of a duty owed by Met-Cap to Anthony Gemma." Without expressing opinion on the first four factors, it is clear that the fifth factor cannot be fulfilled. The Supreme Court of Rhode Island has vigorously asserted that "the issue of liability vel non for social hosts whose guests cause harm is a matter that belongs in the Legislature."Willis, 954 A.2d at 131. Here, the "Plaintiff hasn't come forward with [any] duty triggering facts that [this Court] can recognize and impose liability thereon." Id. at 130.
 Negligent Retention/ Supervision as Source ofLiability
Plaintiff further contends that Met-Cap should be liable from the alternate theories of negligent retention/supervision and respondeat superior. The Rhode Island Supreme Court has permitted a cause of action against an employer for the negligent retention and/or supervision of an employee when a third party is injured by the act of an unfit employee. Broadly v. State,939 A.2d 1016, 1022 (R.I. 2008). An employer has a duty "to exercise reasonable care in selecting [and retaining] an employee who, as far as could be reasonably known, [is] competent and fit for the [employment]." Rivers v. Poisson,761 A.2d 232, 235 (R.I. 2000) (quoting Welsh Manufacturing,Division of Textron, Inc. v. Pinkerton's, Inc.,474 A.2d 436, 440 (R.I. 1984)). Plaintiff argues applicability of this theory based solely on the fact that the party was held during compensated work hours. Plaintiff presents no evidence suggesting Simas to be an unfit or incompetent employee. Nor has Plaintiff brought forth evidence indicating Met-Cap failed to *Page 9 
use reasonable care in selecting and retaining Simas as an employee. Indeed, the depositions of Guarino and Aires Rego, Simas' immediate supervisor, revealed nothing to advance Plaintiff's theories of negligent retention or supervision. Thus, this theory of liability is inappropriate in examining the instant dispute.
 Respondeat Superior as Source of Liability
"Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other." DelSanto v. Hyundai Motor Finance Co.,882 A.2d 561, 565 (R.I. 2005) (quoting Nadeau v. Melin,260 Minn. 369, 110 N.W.2d 29 (1961)). The theory of respondeat superior is based on a relationship of master/servant, principal/agent or employer/employee. Giroux v. Murphy,88 R.I. 280, 147 A.2d 465 (1959). It is not limited to an employer/employee relationship. Under the theory of respondeat superior, a master is liable for the torts of his servant committed while the servant is acting within the scope of his authority and while engaged in the master's business. Drake v.Star Market Co., Inc., 526 A.2d 517 (R.I. 1987). Thus, in order for tort liability to be imputed to the principal the agent must be acting within the scope of employment and by express or implied authority from the principal. Labussiere v. Sousa,87 R.I. 450, 143 A.2d 285 (1958).
Plaintiff cites to Chastain in support of her respondeat superior argument. Chastain v. Litton Systems,Inc., 694 F.2d 957 (4th Cir. 1982). In Chastain, the question of whether the employer was acting as social host, in which event the common law of North Carolina barred recovery by an administrator, or whether the employer was advancing its business interests and thus not acting as social host at time of Christmas party on the employer's premises, precluded summary judgment. The court reasoned that whether the employer was simply entertaining its *Page 10 
employees at a purely social gathering, or whether it was furthering a business purpose by improving working relationships, presented a jury question. Id. at 960.
Chastain is, however, distinguishable from the instant action. In Chastain, all employees were required to check in at the employer's facility to receive a full day's pay, and the party was held on the premises. The employer directly provided alcohol, beginning at 8 a.m. In the instant matter, the party was held at a separate location, attendance was not required, and Town Hall Lanes employees served the alcohol. Although compensated for a full day, employees were "released" from work early.
Being "on the clock" does not automatically bring an employee's actions within the scope of employment. Furthermore, Plaintiff's assertion that the "majority of Met-Cap employees" attended the party is not substantiated by the evidence. Indeed, approximately less than one quarter of Met-Cap's work force actually attended the party.[6]
Plaintiff contends that fostering good will amongst its employees was the pursuit of a business interest and, therefore, the employees were in the scope of their employment. The Court acknowledges that fostering good will amongst the employees may enhance company morale, but does not believe that this corollary benefit is sufficient to transform a holiday bowling party to an afternoon at work. The evidence shows that the primary purpose was to celebrate the upcoming holidays and to offer Met-Cap employees the opportunity to socialize with one another. The fact that Met-Cap did not allow spouses to attend is inconsequential. When one hosts a social gathering one must draw a line between those that are and those that are not invited. This decision could have been made to maintain costs, limit attendance, or incentivize socializing with fellow Met-Cap employees. Regardless, this decision was not *Page 11 
enough to transform a social gathering into a business purpose. Plaintiff ultimately alleges no facts which would support the conclusion that the consumption of alcohol, or the subsequent accident, were acts within Simas' scope of employment.
 Conclusion
In effect, any theories asserted by Plaintiff result in bypassing social host liability and proceeding under the guise of common law negligence principles. To do so would be counter to the Rhode Island Supreme Court's guidance and mandate regarding social host liability.
"Perhaps more than any other branch of law, the law of torts is a battleground of social theory." William L. Prosser et al.,Prosser and Keeton on Torts, 15 (Dan E. Dobbs ed., West Publishing Co., 1984) (1941). The Rhode Island Supreme Court has spoken on the issue of social host liability and stated that "the creation of new causes of action should be left to the Legislature." Ferreira, 652 A.2d at 968. In light of precedent, this Court is bound to apply the current state of the law to the evidence presented before it. Here, the evidence warrants granting summary judgment. This decision does not reflect a lack of compassion or sympathy for the tragic and devastating loss of life, but rather reflects the current state of the law in Rhode Island and the neutral application of the law to the facts.
For the foregoing reasons the motion for summary judgment is granted. Counsel will prepare the appropriate order.
[1] Met-Cap is an employee management company in the business of distributing adult entertainment merchandise. Simas was employed by Met-Cap as an IT technician at the time of the accident.
[2] A Jaeger Bomb is an alcoholic beverage that consists of one shot of Jaegermeister liquor and Red Bull energy drink. The shot of Jaegermeister is dropped into a glass of Red Bull energy drink and consumed quickly.
[3] § 321 Duty To Act When Prior Conduct Is Found To Be Dangerous
 (1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.
 (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.
[4] § 324A. Liability To Third Person For Negligent Performance Of Undertaking
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
[5] § 7. Duty
 Even if the defendant's conduct can be found negligent under § 3 and is the legal cause of the plaintiff's physical harm, the defendant is not liable for that harm if the court determines the defendant owes no duty to the plaintiff, either in general or relative to the particular negligence claim. Determinations of no duty are unusual and are based on judicial recognition of special problems of principle or policy that justify the withholding of liability.
[6] This excludes independent contractors. From deposition testimony, it has been shown that 75-85 employees attended the party. Guarino testified that at that point in time Met-Cap maintained a work force of roughly 400-420 employees and nearly 150 independent contractors around the State.